[S.F. No. 23279. In Bank. Dec. 15, 1975.]

ROBERT S. STRONG et al., Plaintiffs and Respondents, v.
COUNTY OF SANTA CRUZ, Defendant and Appellant.

## Counsel

Howard E. Gawthorp, County Counsel, and Dwight L. Herr, Assistant County Counsel, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, Roderick Walston, Donatas Januta and William M. Chamberlain, Deputy Attorneys General, as Amici Curiae on behalf of Defendant and Appellant.

Adams, Levin, Kehoe, Bosso & Sachs, Alan J. Levin and Philip R. Bates for Plaintiffs and Respondents.

## Opinion

MOSK, J.—Robert S. Strong and Anita M. Strong,[1] purchased a parcel of land in Santa Cruz County for the purpose of constructing a mobile home park. At the time of the purchase, the property had a use permit for the construction of a park of 177 spaces. The county sought to reduce the number of spaces in the park to 142, and its action was challenged by Strong. The primary question to be determined in this proceeding is whether the county was estopped to assert the expiration of the permit as justification for the reduction in the number of spaces allowed because it approved plans for construction subsequent to the expiration date.

Strong entered into a contract to purchase the property on March 15, 1972. A use permit had been granted in 1968 to a prior owner and was renewed by the county several times. The last renewal had occurred on April 12, 1971. The language of the permit was ambiguous as to whether it expired on April 1 or April 12, 1972.[2] At best, it was to expire less than

---

[1]Hereinafter referred to as Strong.

[2]At one place the permit contains a typewritten provision that it expires in March 1972, but a printed statement immediately below this provision states that "use must commence within one year to be valid."

a month after Strong agreed to purchase the property. A county ordinance provided that a use permit lapsed after one year from its effective date unless the permit allowed a longer period.

The permit included as a condition of its validity that if it was not exercised prior to April 1972, it would become null and void and that development thereafter would be subject to the provisions of the new trailer park ordinance, which was pending at the time of issuance of the permit. The new ordinance, which was passed prior to the time Strong purchased the property, required that use permits for mobile home parks must be approved by the board of supervisors. At the time of the purchase, the county was considering a revision of the general plan under which the density allowed for the Strong property would be lowered from 177 to 142 spaces. The revision had been approved by the planning commission, and when Strong purchased the property in 1972, adoption of the new proposal was pending before the board of supervisors, which passed the measure in August of the same year.

The mobile home park was to be constructed in two separate phases, the first of which was to contain 89 spaces. On April 7, 1972, at most five days prior to the expiration date of the permit, the county issued a grading permit to Strong, and on June 5 it approved construction plans, which he was subsequently required to submit to the state for final approval. The county consented to sewer hookups on June 13. All these approvals were confined to the first phase of the project, which Strong completed in the summer or fall of 1972. These approvals were predicated upon the existence of a valid use permit.

The use permit provided that prior to construction of the second phase, a loop road must be built across the northern boundary of the property. In August 1972, Strong filed an application to amend the permit by deleting the requirement for the road. The county took the position that in considering Strong's application for amendment it was not confined to deciding the specific issue raised by him, but that it could examine the permit anew and impose conditions in addition to those set forth in the original permit. A number of hearings before the planning commission and the board of supervisors followed. On January 9, 1973, the board voted to reduce the number of spaces to 142, the number allowed by the new general plan, and to impose additional conditions for the exercise of the permit.[3]

---

[3]Strong sought to withdraw his application to amend the permit prior to the board of supervisors' actions.

Strong filed a petition for a writ of mandate and other relief in the trial court to compel the county to allow him to proceed with construction of the second phase of the project in accordance with the terms of the original permit. For the first time at trial, the county asserted that the use permit was invalid because it had expired in April 1972. The county planning director testified it was the county's practice that if a property owner was unable to construct his project for reasons beyond his control an extension of a use permit would have been granted as a matter of routine "in the old days." He also stated, however, that if at the time a request for an extension had been received a new ordinance affecting the project was pending before the board of supervisors, an application for an extension would be considered in the light of the proposed law.

The trial court made the following findings of fact: Every act of the county with reference to construction of Strong's project was predicated upon and acknowledged the existence of a valid use permit. It was the county's policy to deal reasonably rather than rigidly with expiration dates of use permits and to grant extensions as a matter of course, provided the property owner was proceeding diligently with construction, and Strong was at all times diligent. Had he applied for an extension of the permit prior to April 12, 1972, it would have been granted as a matter of course without the imposition of additional requirements.

Strong, as an experienced real estate developer, was aware of the expiration date of the permit and of the provisions of all relevant county ordinances as well as the county's policy regarding extensions. He purchased the property in reliance on a valid, existing permit for 177 mobile home spaces, and the authenticity of the permit was not questioned by the county at the time of purchase. In good faith and justifiable reliance on the permit, he spent $50,000 for construction work during the first phase, which pertained to preliminary work on the second stage of construction. A reduction from 177 to 142 spaces would result in a loss of income of $2,500 a month.

The court concluded that the county, because of its ratification of Strong's plans, waived any right to insist on an application for extension of the permit and was estopped to raise its contention, made for the first time at trial, that he did not have a valid permit. It went on to hold that the county was prohibited from amending the permit because Strong had attained vested rights therein. A writ of mandate was issued compelling the county to allow Strong to proceed with construction in accordance with the permit as originally issued.

■ The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment. ■ The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 488-489 [91 Cal.Rptr. 23, 476 P.2d 423].)

■ *Mansell* made it clear that, although estoppel may be applied against the government when justice and right require it, the doctrine is inapplicable if it would result in the nullification of a strong rule of policy adopted for the benefit of the public. (3 Cal.3d at p. 493.)

The county attacks the trial court's judgment on two levels. It contends, first, that estoppel may not be invoked to prevent a public body from asserting the invalidity of a permit which authorizes construction in violation of zoning laws. The public interest in preserving community patterns established by such laws, it is argued, outweighs the possible hardship incurred by an individual who has relied upon the unauthorized act of a public official who erroneously issued the permit, and therefore a strong rule of policy adopted for the benefit of the public would be nullified if a permit holder was allowed to proceed with the project. ■ Second, it is urged, even if estoppel may be applied in such circumstances, the evidence does not support the trial court's finding that the county was estopped to assert that Strong's building permit had expired.

We conclude that the second of these contentions is correct because the evidence demonstrates as a matter of law that the county was not estopped to assert the invalidity of the permit since Strong knew that his permit had expired when he sought the approvals relied upon by the trial court as the basis for estoppel. In view of this determination, it is not necessary for us to reach the alternative issue: whether estoppel is unavailable against the government if application of the doctrine will result in construction of an improvement which would violate applicable zoning laws.

Strong does not deny the correctness of the trial court's finding that he was at all times aware that his permit expired in April 1972. The permit

stated that it was null and void if it was not "exercised" prior to April 1972. Strong's belated assertion that he "exercised" the permit by beginning grading before April 12, 1972, is without merit. Even assuming—and this is a highly dubious assumption—that the mere commencement of grading is sufficient to satisfy the requirement that the permit be "exercised," there was no evidence that grading had in fact commenced before April 12 and no finding by the trial court to that effect.[4]

The trial court's finding that the county would have granted Strong an extension of his use permit as a matter of course if he had applied for it before expiration also lacks support in the evidence. As we have seen, the planning director testified that "in the old days" the zoning administrator granted extensions as a matter of routine to a diligent builder who required an extension because of circumstances beyond his control.

Even viewing this equivocal testimony in the light most favorable to the trial court's finding, it is insufficient to support the conclusion that an extension would have been granted to Strong as a matter of course in these current circumstances. There was no evidence, aside from the fact that Strong had purchased the property a few weeks prior to the expiration date of the permit, that he was precluded from commencing construction because of circumstances beyond his control. Furthermore, the permit provided specifically that it would be subject to the new mobile home park ordinance if it was not exercised prior to expiration. The new ordinance would have required that the project be approved by the board of supervisors. We cannot assume the county would have violated the terms of its own permit by issuing a routine extension. Finally, at the time the permit expired the county was considering the adoption of a new general plan which would have reduced the density permitted in Strong's project. The planning commission had already approved the new ordinance, and the matter was pending before the board of supervisors. The planning director testified that in these circumstances an application for an amendment or an extension would be considered in the light of the pending ordinance.[5]

---

[4]For this reason, we reject Strong's assertion that the trial court found as a fact that the permit was valid. The finding of validity was based upon the court's determination that the county was estopped to assert the invalidity of the permit rather than a determination that the permit had not expired because it had been "exercised" by Strong prior to April 12.

[5]The trial court's finding that Strong acted in good faith and justifiable reliance on the permit must also fail. The finding was based upon the asserted practice of the county to

Moreover, even if the county is charged by reason of its issuance of the permit with knowledge of the expiration date, we cannot ignore the evidence indicating that it did not in fact have such knowledge. There is no evidence that any county official in authority was aware of the expiration date prior to the approvals in question, and it is undisputed that approval would not have been issued if there had been such knowledge. In fact, throughout the hearings held before the board of supervisors in the fall and winter of 1973, the county counsel, the planning director, and other county employees repeatedly assured the board that Strong had a valid permit for 177 spaces, and Strong made similar representations to the board.

To apply estoppel in favor of Strong under these circumstances would distort the salutary purposes underlying the doctrine.

The trial court's conclusion that the county waived its right to insist on an application for an extension of the permit is also untenable since a governmental body may not waive the requirements of an ordinance enacted for the public benefit. (Civ. Code, § 3513; *Terry* v. *Bender* (1956) 143 Cal.App.2d 198, 214 [300 P.2d 119]; *Western Surgical Supply Co.* v. *Affleck* (1952) 110 Cal.App.2d 388, 392-393 [242 P.2d 929].)

Finally, the trial court found that Strong had a vested right to construct a mobile home park of 177 spaces in accordance with the use permit. This finding was made in response to a contention of the county at trial that the board of supervisors could properly amend a valid use permit at any time under a county ordinance permitting such amendment at the initiative of county officials.[6] Since we have concluded that Strong did not have a valid use permit beyond April 1972 in any event, we do not reach the question whether, assuming a valid permit, the board of supervisors was prohibited from amending the permit because Strong had acquired vested rights therein.

The judgment is reversed.

Wright, C. J., McComb, J., Tobriner, J., Clark, J., and Richardson, J., concurred.

deal "reasonably rather than rigidly with expiration dates of use permits" and the court's determination that an extension would have been granted to Strong "as a matter of course without the imposition of additional requirements" if he had applied for it before April 12, 1972. As noted above, that determination is not supported by the evidence.

[6]Section 13.04.326 provides that the planning commission or the zoning administrator may, after public hearing, amend any use permit, whenever issued, by the addition, deletion or modification of conditions.

SULLIVAN, J.—While I agree with the conclusion of the majority that the county should not be estopped in the circumstances of this case, I reach that result on the sole ground that the developer had knowledge of the invalidity of his permit prior to seeking the approvals in question. To the extent that the majority rest their holding upon the county's asserted lack of actual knowledge of the invalidity of the permit, I must respectfully express my disagreement with their reasoning. In my view the county, having issued the permit, cannot be heard to maintain that it had no knowledge of its expiration date. Accordingly, the state of its actual knowledge can have no relevance to the matter of estoppel. With this limitation, I concur in the majority opinion.