{¶ 60} I respectfully dissent as I would find that American waived the right to enforce the non-compete agreement because it admittedly violated the terms of the non-compete by forwarding business to Weinpert after he left and started his own business.
 {¶ 61} In Surgidev Corp. v. Eye Technology, Inc. (D.Minn. 1986),648 F.Supp. 661, the district court considered the similar question in the context of an employer who had not enforced a non-compete against other employees. The court, construing California law, noted that the doctrine of equitable estoppel gives rise to the principle that "a person may not deny the existence of a state of facts if he intentionally led another to believe a particular set of circumstances to be true and to rely upon such belief to his detriment." Id. at 698, citing Strong v.County of Santa Cruz, 15 Cal.3d 720, 125 Cal.Rptr. 896, 898, 543 P.2d 264
(1975) (en banc). It then noted a long list of employees who had been permitted to take employment with competitors, and held that "it would be inequitable to permit plaintiff to now rely on a non-compete agreement which it has so blithely ignored in the past." Id. at 103 (footnote omitted).
 {¶ 62} There is no doubt that American twice forwarded business to Weinpert after he left. For example, Richard Totedo, one of American's vice-presidents testified that American received an unsolicited call from a contact seeking help with a proprietary software system designed by Weinpert. American told the contact that Weinpert no longer worked for American, but that it could take a look at the problem, with the caveat that it might take it time to come up to speed on the software system. When the contact balked at having American learn the system on her time, American executives discussed the situation and said, "why don't we just call Joe and see if — because she was looking for him — see if Joe wants to contact her and talk to her." This executive went on to say "I called Joe and explained to her [sic.] that this person had called; do you want to give her a call and see — see what she needs?"
 {¶ 63} If American had any intention of enforcing the non-compete before Weinpert left its employ, it waived that intent by forwarding him business that was encompassed by the terms of the non-compete. What possible interpretation of events could there be when a party to a non-compete agreement tells a former employee bound by that agreement to call a contact who needs to have work performed that is clearly encompassed by the terms of the non-compete? Weinpert could only assume that American consented to having him work for the contact because it knowingly induced Weinpert to call the client.