[No. B215789. Second Dist., Div. Seven. June 14, 2011.]

ASHOK V. PARMAR et al., Plaintiffs, Cross-defendants and Appellants, v. BOARD OF EQUALIZATION, Defendant, Cross-complainant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts 3. and 4. of the Discussion.

**Counsel**

Reed Smith, Margaret M. Grignon, Marty Dakessian and Zareh A. Jaltorossian for Plaintiffs, Cross-defendants and Appellants.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Paul D. Gifford, Assistant Attorney General, Felix E. Leatherwood and Ronald N. Ito, Deputy Attorneys General, for Defendant, Cross-complainant and Appellant.

**Opinion**

**PERLUSS, P. J.**—Ashok V. Parmar, Purnima A. Parmar and Mahinder Parmar (collectively the Parmars) sued the State Board of Equalization (Board) for a refund of cigarette and tobacco taxes paid in part by them and in part on their behalf by their closely held corporation, Santos Agency, Inc. (Santos). Following a bench trial, the trial court found the taxes had been unlawfully assessed against the Parmars individually and granted the Parmars' request for a refund of $69,762.95. The court also awarded the Parmars more than $600,000 in attorney fees under Code of Civil Procedure section 1021.5, finding the successful litigation had resulted in the enforcement of an important right affecting the public interest.

On appeal the Board primarily contends the Parmars lack standing to recover the taxes paid by Santos on their behalf. We agree. Pursuant to section 30407 of the Cigarette and Tobacco Products Tax Law (Rev. & Tax. Code, § 30001 et seq.), only the party who paid the tax can obtain a refund. Accordingly, we reverse the judgment to the extent it awards the Parmars more money than they actually paid in cigarette and tobacco taxes and affirm it in all other respects.

Both the Board and the Parmars also appeal from the postjudgment order awarding attorney fees. In the unpublished portion of our opinion we affirm

the postjudgment order to the extent it finds attorney fees were authorized in this case, but remand to the trial court to reconsider the amount of fees awarded.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Parties*

Purnima and Mahinder Parmar are officers and shareholders of Santos. Ashok Parmar is a shareholder and a director of the company.[1] The Parmars established Santos in 1990 to import items from India and to distribute them to Indian grocery stores. Among the goods Santos imported and distributed were hand-rolled tobacco cigarettes called "beedies."

The Board is a California agency authorized to administer the provisions of the Cigarette and Tobacco Products Tax Law (Rev. & Tax. Code, § 30001 et seq.),[2] which imposes a tax on distributors of cigarettes and tobacco products. (§ 30008.)

### 2. *Santos's Suspension*

In October 1992 Santos's corporate status was suspended for failure to pay franchise taxes and to submit certain required forms. During the period of its suspension Santos continued to import and distribute tobacco products, including beedies, but did not collect cigarette and tobacco taxes from its customers or file distributor returns. The Parmars claim they were unaware of the suspension until late 1994 or early 1995, when their new accountant discovered it. With the assistance of their new accountant, the Parmars completed and filed all required forms for the years 1993 through early 1995, paid the delinquent franchise taxes, and on March 31, 1995 applied to the Secretary of State for a certificate of revivor. Santos's corporate status was revived on April 3, 1995. Since that date Santos has remained in good standing.

### 3. *The Tobacco Audits of Santos and the Notices of Determination*

Beginning in 1997 the Board conducted two cigarette and tobacco tax audits of Santos, one for the period December 19, 1993 through September 13, 1994; the second for the period December 19, 1994 through March 8,

---

[1] Ashok and Purnima Parmar are married. Mahinder Parmar is Ashok Parmar's brother.

[2] Statutory references are to the Revenue and Taxation Code unless otherwise indicated.

1995. The Board's auditors determined that Ashok Parmar, as the principal operator of Santos during its suspension, owed $87,647 in cigarette and tobacco distribution taxes plus $41,549.96 in interest and $30,676.45 in penalties.[3] Accordingly, on October 7, 1998 the Board served a notice of determination on Ashok Parmar advising him of his personal liability for $159,873.41 in cigarette and tobacco distribution taxes, inclusive of interest and penalties, for the period December 19, 1993 through March 8, 1995.

### 4.   Ashok Parmar's First Administrative Appeal of the Assessment

On November 4, 1998 Ashok Parmar filed a petition for redetermination to appeal the October 7, 1998 notice of determination. He argued the Board's calculations were erroneous and the fraud and evasion penalties were unwarranted. In addition, at the administrative appeal conference, he argued the tax liability was unlawfully assessed against him individually, rather than against Santos, which had distributed the beedies during its suspension.

Following the administrative appeal conference, the Board issued a decision recommending a new audit. The Board also recommended that, following the new audit, new notices of determination be issued to each of the Parmars as individuals or as members of a de facto partnership since each of the Parmars had operated the business and had been responsible for distributing the taxable items during Santos's corporate suspension. In addition, the Board found the fraud and evasion penalties were justified.

### 5.   The Reaudit and the Second Administrative Appeal of the Assessment

After the reaudit, in August 2000 the Board issued adjusted notices of determination on each of the Parmars as individuals and as "partners in Santos" and to Santos, "a partnership," notifying each of them of their liability for $69,147.00 in taxes (account No. CR ET 02-001276), plus $46,935.13 in interest and $24,201.45 in penalties. Notices of determination were also issued to the Parmars as individuals and partners in Santos for $615.95 (account No. CP ET 50-001877), plus interest and penalties. The Board did not issue a notice of determination to Santos as a corporation.[4]

In September 2000 the Parmars filed a petition for redetermination appealing the August 2000 notices of determination. On February 18, 2004 the Board issued a decision and recommendation finding the August 2000 notices

---

[3] Section 30224 authorizes imposition of a 25 percent penalty if failure to pay tax is due to fraud or intent to evade the law or authorized use regulations.

[4] The Board is now barred from issuing notices of determination to Santos for the disputed years by the statute of limitations. (See § 30207.)

of determination correct and properly served on the Parmars as individuals. The Board rejected the Parmars' contention Santos should have been assessed, not each of them.

On March 15, 2004 the Parmars requested an oral hearing before the Board. Following the August 24, 2004 hearing, the Board affirmed the February 18, 2004 decision, finding the adjusted August 2000 notices of determination were properly issued to the Parmars as individuals and as partners in a partnership even though Santos had been revived as a corporation at the time of the assessment. The Parmars' petition for rehearing was denied.

### 6. *Payment of the Taxes and the Board's Denial of a Refund*

From June 2005 through July 2006 Santos issued checks to the Board totaling $68,262.28, which the Board credited to the Parmars' tax liability as the Parmars had requested.[5] In addition, the Board levied on the Parmars' joint checking accounts in the amount of $1,500.08, which it also credited to the Parmars' tax account. Neither the Parmars nor Santos paid any of the interest or penalties assessed against the Parmars. The Parmars' administrative claims for a refund were denied as being without merit.

### 7. *The Instant Refund Action*

On October 11, 2007 the Parmars filed the instant action seeking a refund of the $69,762.95 in cigarette and tobacco taxes paid in part by them and in part by Santos and a declaratory judgment as to the amount of taxes, interest and penalties owed. The Board, for its part, filed a cross-complaint against the Parmars to recover unpaid interest and penalties. Santos was not a party to the action.

The Board and the Parmars filed cross-motions for summary judgment, or in the alternative, summary adjudication. The Board argued the Parmars lacked standing to recover any monies paid by Santos on their behalf pursuant to section 30407. The Parmars argued they had been improperly assessed; it was Santos, not each of them, that was responsible for the taxes. The court denied both motions. The court rejected the Board's standing argument on the ground it was not supported by the language of section 30407. Moreover, the court ruled, the argument was "without merit" because the Board had credited the Parmars' account with Santos's payments. As for the Parmars' motion, the court appeared to agree that Santos, not the Parmars,

---

[5] There is no dispute the monies paid by Santos came from its corporate account, and no evidence that they were the Parmars' personal, rather than corporate, funds.

was liable for all taxes incurred during its suspension, but ruled a triable issue of fact existed as to whether Santos was acting as a corporation when it distributed the tobacco products during its suspension or whether one or more of the Parmars were acting as individual distributors.

During the bench trial, the Board again argued the Parmars lacked standing to recover any amount paid by Santos on their behalf. The Parmars, on the other hand, maintained their standing to sue and argued they had been improperly assessed as individuals based on a 45-year-old illegal and unpublished internal Board policy of assessing individuals for taxes and fees incurred by their closely held corporation during the corporation's suspension.

In a lengthy statement of decision, the court determined the Parmars, as the parties assessed, had standing to bring a refund action for the full amount of the taxes paid, including those paid by Santos, and, in any event, having credited Santos's payments to the Parmars' personal accounts, the Board was estopped from claiming otherwise. The court also found the Board had erred in assessing cigarette and tobacco taxes against the Parmars individually rather than against Santos, which had been revived and in good standing at the time of the tax assessments. In light of its ruling that the Parmars had been improperly assessed, the court dismissed the Board's cross-complaint for interest and penalties as moot.

### 8. *Attorney Fees*

The Parmars moved for $1,392,577.40 in attorney fees—actual fees of $773,643 with a 1.8 multiplier—pursuant to Code of Civil Procedure section 1021.5 on the ground the successful outcome of the case had resulted in the enforcement of an important right affecting the public interest, namely, the eradication of a long-standing and illegal Board policy of assessing individual shareholders of a revived closely held corporation for taxes incurred while the corporation was suspended. The trial court agreed attorney fees were authorized and appropriate under the circumstances and awarded the Parmars $627,796.74 in attorney fees.

### DISCUSSION

### 1. *The Parmars Have Standing to Recover in a Refund Action Only the Amount They Actually Paid, Not the Amount Santos Paid on Their Behalf*

#### a. *Section 30407*

Section 30407 of the Cigarette and Tobacco Products Tax Law provides, "A judgment shall not be rendered in favor of the plaintiff in any

action brought against the board to recover any amount paid when the action is brought by or in the name of an assignee of the person making the payment or by any person other than the person making the payment." The Parmars insist section 30407 simply prohibits the assignment of a refund action. That limited interpretation, however, is contradicted by the plain language of the statute. (See *Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196] [absent ambiguity in statute, "we presume the lawmakers meant what they said, and the plain meaning of the language governs"]; *People v. Lawrence* (2000) 24 Cal.4th 219, 230–231 [99 Cal.Rptr.2d 570, 6 P.3d 228] [same].) If section 30407 simply prohibited the assignment of a refund action, the statute would have concluded with the prohibition against recovery by an assignee and would not have included the disjunctive "or" followed by additional language prohibiting recovery in a refund action "by any person other than the person making the payment." ▆ (See *Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 274 [41 Cal.Rptr.2d 220, 895 P.2d 56] [statutory interpretations that make terms meaningless or inoperative are to be avoided]; *Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified School Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155] [same]; *Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672] [effect should be given whenever possible to every word and phrase of a statute so that no part is left without meaning].)

Although the relevant language in section 30407 has not been addressed in any published appellate court decision, the Supreme Court interpreted nearly identical language in a similar tax statute in *Easton v. County of Alameda* (1937) 9 Cal.2d 301 [70 P.2d 640] (*Easton*). In *Easton* a real property owner brought a refund action to recover excess property taxes paid by its tenant pursuant to a lease agreement. Like the Parmars, the property owner argued it had standing to proceed in a refund action because it was the party assessed and thus the one legally responsible for paying the tax. The court disagreed. Relying on statutory language in former Political Code section 3804 prohibiting recovery in a refund action when the action is "brought by an assignee of the person paying the tax or by any person other than the person who has paid the tax,"[6] the court concluded only the party who paid the tax could obtain a refund. The court explained the language "show[s] a legislative intention to allow tax refunds only to those persons who pay the taxes claimed to have been erroneously assessed. The statute operates to benefit 'all persons who pay taxes they are not legally bound to pay' [citation] but does

---

[6] Like section 30407, former Political Code section 3804 provided, " 'In no case shall any judgment be rendered in favor of plaintiff in any action brought for the enforcement or allowance of any rights or claims under this section . . . if the said action be brought by an assignee of the person paying said tax, or by any person other than the person who has paid the tax . . . .' " (*Easton, supra,* 9 Cal.2d at pp. 302–303.)

not allow a recovery by a property owner whose taxes have been paid by someone else under a contract to do so. In that case the property owner has parted with nothing and he has no valid claim for a refund." (*Easton,* at pp. 303–304.)[7]

■ *Easton, supra,* 9 Cal.2d 301 was decided more than two decades before the Legislature enacted section 30407 in 1959. "When legislation has been judicially construed and a subsequent statute on a similar subject uses identical or substantially similar language, the usual presumption is that the Legislature intended the same construction . . . ." (*People v. Lopez* (2003) 31 Cal.4th 1051, 1060 [6 Cal.Rptr.3d 432, 79 P.3d 548]; accord, *People ex rel. Gwinn v. Kothari* (2000) 83 Cal.App.4th 759, 769 [100 Cal.Rptr.2d 29] ["the Legislature is deemed to have acted with knowledge of existing statutes and judicial decisions"]; *In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437 [35 Cal.Rptr.2d 155]; see *People v. Herrera* (1998) 67 Cal.App.4th 987, 993 [79 Cal.Rptr.2d 539].) We presume the Legislature was aware of the *Easton's* interpretation of a substantially similar statute and intended the same construction for section 30407.

Our analysis is also reinforced by those judicial decisions construing section 5140,[8] the successor to the statute interpreted in *Easton.* (See, e.g., *Grotenhuis v. County of Santa Barbara* (2010) 182 Cal.App.4th 1158, 1165 [105 Cal.Rptr.3d 918]; *IBM Personal Pension Plan v. City and County of San Francisco* (2005) 131 Cal.App.4th 1291, 1305 [32 Cal.Rptr.3d 656] (*IBM Personal*); *Mayhew Tech Center, Phase II v. County of Sacramento* (1992) 4 Cal.App.4th 497, 510 [5 Cal.Rptr.2d 702].) In each case the appellate court followed *Easton* in holding that the person who paid the property tax has standing to recover in a refund action only the money he or she paid. (See, e.g., *Grotenhuis,* at p. 1165 [where excess property taxes were paid in part by the landlord and in part by the tenant, each only had standing to recover the amount it paid; "Grotenhuis may not sue to recover excess property taxes paid by someone else, such as his landlord, who pays the tax by design or mistake."]; *IBM Personal,* at p. 1305 [pension plan prohibited under § 5140 from recovering property tax refund because it was not the party who paid

---

[7] At oral argument the Parmars emphasized that the tenant in *Easton, supra,* 9 Cal.2d 301 had paid the property tax pursuant to a provision in his lease agreement and attempted to distinguish a contractual obligation to pay the taxes of another from those situations in which the tax is paid gratuitously on another's behalf. As discussed, however, the holding in *Easton* pertains to *who* paid the tax, not the reason for the payment. (*Id.* at pp. 303–304.)

[8] Section 5140, which applies to property tax cases, provides, "The person who paid the tax, his or her guardian or conservator, the executor of his or her will, or the administrator of his or her estate may bring an action only in the superior court . . . against a county or a city to recover a tax which the board of supervisors of the county or the city council of the city has refused to refund on a claim pursuant to Article 1 (commencing with Section 5096) of this chapter. No other person may bring such an action; but if another should do so, judgment shall not be rendered for the plaintiff."

the tax]; *Mayhew Tech Center*, at p. 510 [state not entitled to refund of taxes paid to county by property owner because state did not pay the taxes, property owner did].)

The Parmars attempt to distinguish section 5140 and the judicial decisions interpreting it by claiming property tax is inherently different from the distribution taxes at issue in this case. Property tax, they explain, is assessed on the property, not the person: "Since the property assessed with the tax cannot seek a refund, multiple persons or entities could claim the right to a refund. [I]n contrast, cigarette and tobacco taxes are assessed against a particular person, and thus it is the person assessed as the distributor that is entitled to a refund of the taxes paid. The possibility of multiple refund claims, which a property tax assessor would face, is not faced by the Board as to cigarette and tobacco product taxes."

The proffered distinction is not persuasive. Even assuming inherent differences between real property taxes and the instant distribution tax, the question in any refund action is not the nature of the property, but the person who paid the tax. The difficulty in sorting out who may be entitled to the refund is the reason numerous tax statutes, like section 30407, prohibit assignment of a refund action as well as limit who may recover.[9] As the court explained in *IBM Personal, supra*, 131 Cal.App.4th at page 1305, highlighting section 30407 among other tax statutes, "The reason these tax statutes impose such a restrictive standing requirement is evident. This limitation frees the taxing authority from the burden . . . of untangling a web of agreements and/or accounts in order to ascertain who is the proper recipient of any refund due." Property tax is not unique in this aspect. As the instant case attests, competing claims may arise any time someone pays the tax on behalf of the assessed party, regardless of the nature of the property taxed.[10]

---

[9] In *IBM Personal, supra*, 131 Cal.App.4th at page 1305, the court identified 16 statutes in addition to section 5140, including section 30407, that limit standing to recover in a tax or fee refund action to those who paid the tax: Sections 6937 (sales and use tax), 8152 (motor vehicle fuel license tax), 9175 (use fuel tax), 11577 (private railroad car tax), 13108 (insurance tax), 32418 (alcoholic beverage tax), 38617 (timber yield tax), 30407 (cigarette and tobacco distribution tax), 40131 (energy resources surcharge), 41114 (emergency telephone users surcharge), 43478 (hazardous substances tax), 45708 (integrated waste management fee), 46258 (oil spill response, prevention and administration fees), 50149 (underground storage tank maintenance fee), 55248 (fee payer), and 60548 (diesel fuel tax).

[10] In this way, the standing limitation in the tax statutes are exceptions to the ordinary rules authorizing a cause of action to be brought "in the name of the real party in interest, except as otherwise provided by statute." (Code Civ. Proc., § 367; see *IBM Personal, supra*, 131 Cal.App.3d at p. 1305 ["[a]lthough the Plan may be the real party in interest as to the taxes and penalties paid by Chase, the Plan's failure to pay the taxes barred it from bringing this refund action"].)

■ Similarly without merit is the Parmars' attempt to distinguish between section 5140 and 30407 on the ground the former specifies who can sue for a refund, while the latter merely limits recovery in the action to those persons who paid the tax. Whether the issue is framed as one of standing to prosecute a refund action or as one authorizing recovery in the action, the effect is the same: Only those persons who paid the disputed tax may recover their excess payments in a refund action. (*Easton, supra,* 9 Cal.2d at p. 303; see *IBM Personal, supra,* 131 Cal.App.4th at p. 1304 [citing § 30407 as similar to § 5140 in limiting recovery in refund action to those persons who paid the tax]; *Mayhew Tech Center, Phase II v. County of Sacramento, supra,* 4 Cal.App.4th at p. 510.)

Our opinion in *Lincoln National Life Ins. Co. v. State Bd. of Equalization* (1994) 30 Cal.App.4th 1411 [36 Cal.Rptr.2d 397] (*Lincoln*) is not to the contrary. In *Lincoln* an insurance company that managed an employer's self-insured benefit plan brought an action for a refund of franchise taxes it had paid after being assessed insurance taxes based on gross premiums collected. The employer filed a complaint in intervention supporting the insurance company's claim for a tax refund. The trial court found the insurance company had been improperly assessed and was entitled to a refund of the taxes it had paid. In addition, the trial court awarded costs to both the insurance company and the employer as the prevailing parties in the action. We reversed the award of costs to the employer, holding that the employer, who had not paid the tax, was prohibited from recovering a judgment in its favor under section 13108. (*Lincoln,* at p. 1424, citing § 13108, subd. (a) [" '[a] judgment shall not be rendered in favor of the plaintiff when the action is brought by or in the name of an assignee of the insurer paying the tax, interest, or penalties, or by any person other than the insurer that has paid the tax, interest, or penalties' "].)

■ Seizing on the observation in *Lincoln, supra,* 30 Cal.App.4th at page 1424 that the employer, "which was not the party against whom the tax was assessed or the insurer that actually paid the required taxes, is barred from winning a judgment herein," the Parmars contend *Lincoln* stands for the proposition that a party has standing to recover in a refund action if it was either assessed or paid the taxes. We held no such thing. In a case in which there was no issue whether assessment alone was sufficient to confer standing to obtain a refund, we simply commented the employer was not even the entity against whom the taxes had been assessed, let alone the party that had paid the tax. (See *Golden Gateway Center v. Golden Gateway Tenants Assn.* (2001) 26 Cal.4th 1013, 1029 [111 Cal.Rptr.2d 336, 29 P.3d 797] [decision " 'is not authority for everything said in the . . . opinion but only "for the points actually involved and actually decided" ' "]; *Santisas v. Goodin* (1998) 17 Cal.4th 599, 620 [71 Cal.Rptr.2d 830, 951 P.2d 399] [same]; *Hills v.*

*Superior Court* (1929) 207 Cal. 666, 670 [279 P. 805] [statements or conclusions not necessary to the decision are not to be regarded as authority].)

■ The Parmars protest it elevates form over substance to look to the source of the funds as the basis to decide standing to recover in a refund action. After all, they argue, "the corporation may have provided the funds to the Parmars to pay their individual tax liability but it unquestionably did not pay the tax assessed—the Parmars did." It appears the Parmars want it both ways. They insist on differentiating between themselves and the corporation when determining the proper party assessed, but not when determining the proper party to bring the refund action. In the latter case, they assert, they and Santos are "one and the same." We reject such a dubious proposition. Absent any evidence the Parmars were the alter egos of Santos—a proposition the Parmars firmly dispute and for which the trial court found no supporting evidence—the Parmars may only recover the amount they paid. (§ 30407; see *Grotenhuis v. County of Santa Barbara, supra,* 182 Cal.App.4th at p. 1165 [absent evidence that Grotenhuis was alter ego of corporation, "Grotenhuis lacked standing to seek the refund of [property] taxes paid by Corporation"].)

### b. *Equitable estoppel*

■ The Parmars argued, and the trial court agreed, the Board is equitably estopped from raising the Parmars' lack of standing to recover in a refund action the monies Santos paid on its behalf. To establish equitable estoppel it must be shown that (1) the party to be estopped was apprised of the facts and intended his or her conduct to be acted upon or so acted in a way that the party asserting the estoppel had a right to believe it was so intended; (2) the other party was ignorant of the true state of facts; and (3) he or she relied on the conduct to his or her injury. (*Strong v. County of Santa Cruz* (1975) 15 Cal.3d 720, 725 [125 Cal.Rptr. 896, 543 P.2d 264].)

■ "The government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (*City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 496–497 [91 Cal.Rptr. 23, 476 P.2d 423]; accord, *J.H. McKnight Ranch, Inc. v. Franchise Tax Bd.* (2003) 110 Cal.App.4th 978, 991 [2 Cal.Rptr.3d 339].) Still, " '[t]he general rule is that estoppels will not be invoked against the government or its agencies except in rare and unusual circumstances.' " (*City of Santa Cruz v. Pacific Gas & Electric Co.* (2000) 82 Cal.App.4th 1167, 1177 [99 Cal.Rptr.2d 198].) Indeed, "it is the unusual case

in which estoppel will be applied in tax cases; the case must be clear and the injustice great . . . ." (*U. S. Fid. & Guar. Co. v. State Bd. of Equal.* (1956) 47 Cal.2d 384, 389 [303 P.2d 1034].)

■ The Parmars argue estoppel is appropriate because the Board never raised the standing issue in the administrative proceedings. That argument is one of forfeiture, not estoppel. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 [13 Cal.Rptr.3d 786, 90 P.3d 746] [failure to raise issue at earliest opportunity results in forfeiture of question in later proceedings]; *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184–185, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261] [same].) Even if forfeiture, which generally applies to the taxpayer (§ 30403 [claimant may bring action for refund based on "grounds set forth in the [administrative] claim"]), were also extended to positions taken by the Board to deny recovery, the doctrine need not be applied here, where the claim involves the legal interpretation of section 30407 based on undisputed facts. (See *Fox v. State Personnel Bd.* (1996) 49 Cal.App.4th 1034, 1039 [57 Cal.Rptr.2d 279] [forfeiture doctrine not applied when question involves pure question of law such as statutory interpretation based on undisputed facts]; cf. *Parr-Richmond Industrial Corp. v. Boyd* (1954) 43 Cal.2d 157, 165 [272 P.2d 16] [distinguishing between exhaustion requirements when claim involves agency's valuation of property rather than legality of assessment].)

■ Second, the Parmars contend the Board is estopped from raising standing to recover monies paid by Santos because the Board accepted the payment and credited the Parmars' tax account. Contrary to the Parmars' contention, nothing prohibits the Board from accepting payment of taxes from someone other than the responsible party nor does crediting the taxpayer's account with monies paid by someone else on the taxpayer's behalf preclude the Board from relying on section 30407's standing requirements. Moreover, although no notice of determination was issued to Santos as a corporation, there is no dispute by either the Board or Santos that the corporation should have been the entity assessed and, if properly assessed, owed the money it paid. This is not, therefore, the "rare or unusual" case in which equity demands application of an estoppel against a government agency.

### c. *Section 30361*

Section 30361 provides, "If the board determines that any amount not required to be paid under this part has been paid by any person, the board shall set forth that fact in its records and certify the amount collected in excess of the amount legally due and the person from whom it was collected or by whom it was paid. The excess amount collected or paid shall be

credited by the board on any amounts then due and payable from the person from whom the excess amount was collected or by whom it was paid under this part, and the balance shall be refunded to the person, or his or her successors, administrators, or executors. . . ."

██ The trial court found section 30361 "permits a refund to the persons [whose] accounts were credited, in this case, [the Parmars]." The Parmars cited section 30361 in the trial court for this proposition, but have abandoned that argument on appeal, and for good reason. Section 30361 requires the Board to credit the person or entity who paid the tax with any excess or overpayment. It does not permit the refund of money to any person (other than the taxpayer's successor, administrators or executors) who did not pay the tax. Nothing in section 30361 undermines section 30407 or transforms the Board's decision to credit the Parmars' individual accounts to an authorization permitting the Parmars to recover in a refund action monies they did not pay.

### 2. *The Parmars Were Properly Awarded a Refund of the Monies They Paid*

The trial court found Santos was responsible for the disputed cigarette and tobacco taxes based on its distribution of tobacco products during its suspension. The court explained Santos's status as a suspended corporation did not relieve it of its tax liability and that it, not its principals, remained responsible for actions undertaken during its suspension. The court relied on *U.S. v. Standard Beauty Supply Stores, Inc.* (9th Cir. 1977) 561 F.2d 774, 776–777, which held the suspension of the corporation under section 23301 for failure to pay its franchise taxes does not operate to make its principals liable for its tax obligations incurred during its suspension: "It should be emphasized that, while section 23301 suspends the corporation's powers, the corporation continues to exist. Actions that would have been considered those of the corporation before the suspension should ordinarily continue to be viewed as actions of the corporations. If the corporation acts, it is the corporation, not its agent, officers, or shareholders, who should be held privately responsible for such actions." (*Standard Beauty Supply*, at pp. 776–777, fn. omitted.) The court also relied on section 23303, which makes clear that "any corporation that transacts business or receives income within the period of its suspension or forfeiture shall be subject to tax under the provisions of this chapter."

██ Although the Board vigorously argued at trial the legality of its policy of assessing principals of a closely held corporation for tax liabilities incurred by the corporation during its suspension, the Board has expressly

abandoned that argument on appeal.[11] Instead, it asserts reversal of the entire judgment is required because the trial court improperly shifted the burden to it to establish the tobacco products had been distributed by the Parmars in their individual capacities, instead of leaving the burden to prove entitlement to a refund with the Parmars as required. (See *El Dorado Oil Works v. McColgan* (1950) 34 Cal.2d 731, 744–745 [215 P.2d 4] [in tax refund action, taxpayer has burden of proving all facts necessary to establish its right to a refund]; *Jimmy Swaggart Ministries v. State Bd. of Equalization* (1988) 204 Cal.App.3d 1269, 1276 [250 Cal.Rptr. 891].) The record shows otherwise.

The trial court considered whether a corporation could be held liable for the distribution of taxable items during its suspension. After concluding it could, the court next considered whether Santos distributed the items while acting as a corporation and found it had.[12] Finally, it addressed the Board's arguments that the Parmars were essentially the corporation, an argument resting largely on the allegation they had failed to observe corporate formalities. The court construed these arguments by the Board as alter ego allegations and, citing affirmative evidence provided by the Parmars, found the Parmars were not the alter egos of Santos. On this record, we have little difficulty concluding the court properly placed the burden on the Parmars to show their entitlement to a refund on the ground it was Santos that had distributed the taxable items during the relevant period.[13]

---

[11] In response to the Parmars' request for judicial notice of Assembly Bill No. 2676 (2009–2010 Reg. Sess.), which, had it been enacted, would have made principals personally liable for the distribution of taxable items by their suspended closely held corporation, the Board states, "[I]n this appeal there is no issue raised regarding whether or not the law permits personal liability for cigarette and tobacco products tax, or any other special tax or fee, to be based solely on continued distribution of cigarettes and tobacco products during corporate suspension. Therefore, in this appeal, the proposed sales and use tax amendments to Revenue and Taxation Code section 6829 in [Assembly Bill] 2676 are not relevant to that purported issue."

In light of the Board's concession concerning the illegality of its former internal policy authorizing the assessment of individuals for the conduct of their suspended closely held corporations, we deny the Parmars' request for judicial notice on the ground the materials provided are not of substantial consequence to the determination of the action. (Evid. Code, §§ 452, 453, 459.)

[12] All imports and purchases of the tobacco products were in Santos's name; all shipments and payments were in Santos's name. There was no evidence any of the Parmars were acting in their individual capacity in connection with the importation and distribution of the cigarette and tobacco products.

[13] Because the Parmars owed no taxes for the distribution of tobacco products, the Board's claim they owe interest and penalties on their tax obligation is moot.

3., 4.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is reversed to the extent it awards the Parmars more than the $1,500.08 they paid in taxes. In all other respects, the judgment is affirmed. The postjudgment order is reversed and remanded to the trial court to clarify its findings and recalculate the attorney fee award, if appropriate. The parties are to bear their own costs on appeal.

Zelon, J., and Jackson, J., concurred.

On July 13, 2011, the opinion was modified to read as printed above.

*See footnote, *ante*, page 705.