Filed 7/15/24  Gold Star Construction v. Santa Paula Energy Storage CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| GOLD STAR CONSTRUCTION, INC.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>SANTA PAULA ENERGY STORAGE, LLC, et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B326880<br>(Super. Ct. No. 56-2022-00572610-CU-BC-VTA)<br>(Ventura County) |

Gold Star Construction, Inc. (Gold Star) appeals an order releasing a mechanics lien on real property owned by Santa Paula Energy Storage, LLC (SPES).  Gold Star contends it substantially complied with the mechanics lien requirements notwithstanding its failure to give advance notice to the construction lender (Civ. Code, § 8200, subds. (a)(3), (e)(2)).[1]  We

---

[1] Statutory references are to the Civil Code.

affirm.

## FACTUAL AND PROCEDURAL HISTORY

Gold Star provided labor and materials to construct a battery storage building for SPES. It signed a construction contract requiring SPES to provide information for providing notice of, or enforcing, a mechanics lien, "including information concerning any construction lender for the Project."

Gold Star also signed a Consent and Agreement (consent agreement). It stated that SPES's "direct owner," esFaraday, LLC,[2] was constructing battery energy storage facilities in California, and SPES was constructing such a facility in Santa Paula (the Project). It also stated that financial institutions (Secured Parties) were financing construction of the facilities by loaning money to esFaraday, secured by a first-priority security interest in unspecified property interests of SPES. CIT Bank (CIT) was identified as the Secured Parties' "Collateral Agent." (Underlining omitted.) It stated, "[E]ach of the Secured Parties constitutes a financing party . . . and is entitled to all rights and interests afforded to a financing party." The consent agreement also required Gold Star to give CIT notice of any default, and provided CIT's name and address for receipt of notice.

Eight months earlier, a construction deed of trust for the Project was recorded with the county recorder. This allowed CIT to guarantee the Secured Parties' financing of the Project and to foreclose if esFaraday defaulted on the loan.

In this lawsuit Gold Star contends that SPES failed to pay the full contract amount. It recorded a mechanics lien but did not

---

[2] The certificate of interested parties in respondent's brief states that esFaraday, LLC, is the parent of SPES, and esVolta, L.P. is the parent of esFaraday, LLC.

2

provide advance notice to CIT.  Gold Star then sued SPES and esVolta for damages and foreclosure on its mechanics lien.  SPES challenged the validity of the mechanics lien and filed a *Lambert* motion to expunge the lien.  (*Lambert v. Superior Court* (1991) 228 Cal.App.3d 383, 387.)

In support of its opposition to the *Lambert* motion, Gold Star's owner declared that SPES "[o]riginally" stated there would be no lender.  Gold Star became aware that esVolta had a lender but was "led to believe" the loans were secured by other collateral.  He stated that Gold Star did not understand that the secured loan described in the consent agreement referred to a "construction lender" for the Project.  He said that Gold Star had a good faith belief there was no construction lender because, unlike most projects with a construction lender, no lender inspected the Project's progress, signed off on payment applications, or interacted with Gold Star.

A declaration by Gold Star's attorney stated that a title search after the contract was entered did not "reveal" the deed of trust.  She also stated that Gold Star did not receive a response after it requested information about financing for the Project.

The trial court granted the motion to expunge the lien.

DISCUSSION

A mechanics lien allows a contractor to secure payment for labor and materials it has provided on a project.  (§ 8468; *Rexroth & Rexroth, Inc. v. General Casualty Co. of America* (1966) 242 Cal.App.2d 363, 371.)  "[T]he mechanics' lien laws [are] remedial legislation, to be liberally construed for the protection of laborers and materialmen." (*Connolly Development, Inc. v. Superior Court* (1976) 17 Cal.3d 803, 826-827, fn. omitted.)

Before recording a mechanics lien, the claimant must give

3

preliminary notice to the owner, direct contractor, and construction lender.  (§ 8200, subd. (a).)  The notice must include a "general statement of the work provided" (§ 8102, subd. (a)(6)(A)), a "statement or estimate of the claimant's demand" (§ 8102, subd. (a)(6)(C)), an "estimate of the total price of the work provided and to be provided" (§ 8202, subd. (a)(2)), and the statutory "NOTICE TO PROPERTY OWNER" (§ 8202, subd. (a)(3)).

The preliminary notice must be provided no later than 20 days after the claimant has first furnished work on the project.  (§ 8204, subd. (a).)  "A claimant with a direct contractual relationship with an owner or reputed owner is required to give preliminary notice only to the construction lender or reputed construction lender, if any."  (§ 8200, subd. (e)(2).)  Compliance with the notice requirement is a "necessary prerequisite to the validity of a lien claim."  (§§ 8200, subd. (c), 8410.)

In a motion to expunge a mechanics lien, "inquiry by the court [is] limited to the probable validity of the lien."  (*Lambert v. Superior Court*, *supra*, 228 Cal.App.3d at p. 387.)  The claimant has the burden to establish the validity of the claim by a preponderance of the evidence.  (*Howard S. Wright Construction Co. v. Superior Court* (2003) 106 Cal.App.4th 314, 319.)  We review the decision for abuse of discretion.  (*Id.* at p. 320.)  We also do not reweigh conflicting evidence and review factual determinations for substantial evidence.  (*Ibid.*)

*Gold Star's knowledge of lender*

A "construction lender" is entitled to preliminary notice required to establish the probable validity of a mechanics lien.  It includes a "beneficiary under a deed of trust lending funds with which the cost of all or part of a work of improvement is to be

4

paid." (§ 8006, subd. (a).) Gold Star does not challenge the trial court's conclusion that CIT qualifies as a "construction lender." It contends instead that it had no knowledge there was a construction lender for the Project. We are not persuaded.

The trial court found: "The Consent Agreement and the recording of the construction deed are strong evidence that Gold Star was given notice (actual and constructive) that there were construction lenders and that CIT Bank was the lenders' agent." Substantial evidence supports this finding. The consent agreement gave Gold Star actual knowledge that CIT was the agent for lenders financing the Project, secured by a security interest in property of SPES. Gold Star also had constructive knowledge of a construction lender based on the recorded deed of trust. (*Romak Iron Works v. Prudential Ins. Co.* (1980) 104 Cal.App.3d 767, 775 (*Romak*); *Kodiak Industries, Inc. v. Ellis* (1986) 185 Cal.App.3d 75, 84-85.)

Gold Star counters that SPES misrepresented that there was no construction lender and failed to respond to its inquiries regarding whether there was a construction lender. But the trial court found these inquiries lacked sufficient detail to show a reasonable effort to identify the construction lender. And in our view, Gold Star's assertion that it later requested but did not receive lender information shows it had reason to doubt the purported statement that there was no lender. That uncertainty compelled a search of public records and charged Gold Star with constructive knowledge of the lender information in the deed of trust. (*Force Framing, Inc. v. Chinatrust Bank (U.S.A.)* (2010) 187 Cal.App.4th 1368, 1378.)

*Substantial compliance*

Gold Star also contends the court erred in expunging its

mechanics lien because it substantially complied with the statutory requirements.  We disagree.

The statutory provisions regarding mechanics liens are intended to protect laborers and material suppliers who have improved property.  (*Industrial Asphalt, Inc. v. Garrett Corp.* (1986) 180 Cal.App.3d 1001, 1006.)  But the Legislature also "imposed the notice requirements for the concurrently valid purpose of alerting owners and lenders to the fact that the property or funds involved might be subject to claims arising from contracts to which they were not parties and would otherwise have no knowledge."  (*IGA Aluminum Products, Inc. v. Manufacturers Bank* (1982) 130 Cal.App.3d 699, 705-705 (*IGA Aluminum Products*).)  We cannot frustrate "the Legislature's manifested intent to exact strict compliance with the preliminary notice requirement."  (*Romak, supra*, 104 Cal.App.3d at p. 778.)

The cases upon which Gold Star relies do not excuse its failure to provide preliminary notice to CIT as a construction lender of which it had actual or constructive knowledge.  In *Wand Corp. v. San Gabriel Valley Lumber Co.* (1965) 236 Cal.App.2d 855, 857, the claimant subcontractor made a technical error in its notice to the owner by writing "claimant" on the form in the place for the name of the contractor.  The court held the error did not necessarily invalidate the lien.  (*Id.* at p. 862.)  The court noted a "unifying thread" in case law that technical errors are not fatal if "no one is prejudiced" by the error.  (*Id.* at p. 861.)  But here, CIT was not required to show prejudice.  (See *IGA Aluminum Products, supra*, 130 Cal.App.3d at p. 706 [construction lender not required to show prejudice from violation of statutory notice requirements].)  Nor did Gold Star show that CIT, which had a security interest to protect, was not prejudiced by the failure to

6

receive notice.

In *Harold L. James, Inc. v. Five Points Ranch, Inc.* (1984) 158 Cal.App.3d 1, the subcontractor gave the owner a one-sentence mechanics lien notice in small print rather than the boldface paragraph required by statute. (*Id.* at p. 3 & fn. 1.) The Court of Appeal affirmed the order invalidating the lien. "[W]here the Legislature has provided a detailed and specific mandate as to the manner or form of serving notice upon an affected party that its property interests are at stake, any deviation from the statutory mandate will be viewed with extreme disfavor." (*Id.* at p. 6.) Similarly here, Gold Star failed to give the required notice to CIT.

Nor does *Hub Construction Specialties, Inc. v. Esperanza Charities, Inc.* (2016) 244 Cal.App.4th 855 entitle Gold Star to relief. The claimant there properly served the owner with preliminary notice by certified mail but failed to produce a return receipt previously required by statute. In reinstating the mechanics lien, the court stated, "We do not disagree with the rule that strict compliance with the notice requirements of Civil Code former section 3097[3] is required. . . . We merely decline to extend the rule of strict construction to the proof of service requirements." (*Id.* at p. 864.) But in contrast here, it is undisputed that CIT was not served with the required notice.

Our opinion in *Truestone, Inc. v. Simi West Industrial Park II* (1984) 163 Cal.App.3d 715, also does not aid Gold Star. The

---

[3] Like subdivisions (a)(3) and (e)(2) of current section 8200, former section 3097, subdivisions (a) and (b), included a requirement of preliminary notice to the construction lender. (Stats. 2003, ch. 54, § 1, p. 204, repealed by Stats. 2010, ch. 697, § 16.)

7

materials provider there gave notice to the owner by regular mail rather than the statutorily required certified mail. (*Id.* at p. 720.) The trial court entered summary judgment for the owner, but we reversed, finding triable issues of fact as to whether the owner had actual notice of the claimant's identity and had entered a contract by promising to pay. (*Id.* at p. 723.) We declined to set aside the mechanics lien based on "meaningless technicalities" where "the property owner [is not] prejudiced by lack of notice." (*Ibid.*) But here, Gold Star was still "required to give preliminary notice . . . to the construction lender or reputed construction lender." (§ 8200, subd. (e)(2).)

Gold Star also contends that its failure to provide notice was excused because CIT was a party to the consent agreement and therefore had actual knowledge of Gold Star's work on the Project. But the failure to give a construction lender 20-day notice is not excused by the lender's actual knowledge that the claimant is providing materials. (See *IGA Aluminum Products*, *supra*, 130 Cal.App.3d at p. 702.) And even if CIT knew Gold Star was working on the Project, Gold Star has not shown that CIT had knowledge of the information for which notice was required. That information included a "general statement of the work provided" (§ 8102, subd. (a)(6)(A)), a "statement or estimate of the claimant's demand" (§ 8102, subd. (a)(6)(C)), an "estimate of the total price of the work provided and to be provided" (§ 8202, subd. (a)(2)), and the statutory "NOTICE TO PROPERTY OWNER" (§ 8202, subd. (a)(3)).

*Equitable estoppel*

Gold Star asserts SPES is estopped from expunging the lien because it misrepresented that there was no construction lender. But the trial court was not required to accept this factual

8

assertion.  Moreover, the doctrine of equitable estoppel requires that Gold Star, as the party relying on the representation, "must be ignorant of the true state of facts."  (*Strong v. County of Santa Cruz* (1975) 15 Cal.3d 720, 725.)  Equitable estoppel does not apply here because substantial evidence supports the trial court's finding that Gold Star had actual and constructive knowledge of the identity of CIT as the construction lender.

DISPOSITION

The order expunging the mechanics lien is affirmed.  Respondents shall recover their costs on appeal.

<u>NOT TO BE PUBLISHED.</u>


BALTODANO, J.


We concur:



YEGAN, Acting P. J.



CODY, J.

Ronda J. McKaig, Judge

Superior Court County of Ventura

_____

Hunt Ortmann Palffy Nieves Darling & Mah, Emily A. Kromke; Benedon & Serlin, Wendy S. Albers and Mark Schaeffer for Plaintiff and Appellant.

Alpha Trial Group, Richard K. Welsh and Jeffrey Zuidema for Defendants and Respondents.