[No. B212264. Second Dist., Div. Six. Mar. 15, 2010.]

DAVID W. GROTENHUIS, Individually and as Trustee, etc., et al., Plaintiffs and Respondents, v. COUNTY OF SANTA BARBARA, Defendant and Appellant.

COUNSEL

Dennis A. Marshall, County Counsel, and Marie A. LaSala, Deputy County Counsel, for Defendant and Appellant.

Kristine Cazadd, Robert W. Lambert, Richard Sungjoo Moon and Jennifer B. Henning for California State Association of Counties as Amicus Curiae on behalf of Defendant and Appellant.

The Law Offices of John Derrick and John Derrick for Plaintiffs and Respondents.

Stephen H. Bennett as Amicus Curiae on behalf of Plaintiffs and Respondents.

---

OPINION

**YEGAN, J.**—County of Santa Barbara (County) appeals a tax refund judgment entered in favor of David W. Grotenhuis, as an individual and trustee of the Grotenhuis Family Living Trust (Grotenhuis) and Grotenhuis Investments, Inc., a closely held corporation (Corporation). The trial court ruled that Grotenhuis, as the alter ego of corporation, can claim a homeowner's property tax exemption (Rev. & Tax. Code, § 218)[1] and transfer the base year value of a former residence to a new residence of which Corporation is the owner of record. (§ 69.5.) There is no statutory provision or precedent for this ruling and we reverse.

Subject to certain conditions, a homeowner over the age of 55 may sell a principal residence that qualifies for a homeowner's property tax exemption (§ 218), purchase a replacement dwelling of equal or lesser value in the same county, and transfer the property tax basis of the principal residence to the replacement dwelling. (§ 69.5, subd. (a).) The Legislature calls this a "transfer of base year value." (§ 69.5, subds. (g)(2) & (j)(1).)[2]

---

[1] All statutory references are to the Revenue and Taxation Code unless otherwise stated.

[2] Section 69.5 was enacted pursuant to Proposition 60, which was approved by the voters in 1986 to amend section 2 of article XIII A of the California Constitution and provide property tax relief to senior citizens and "severely and permanently disabled person[s]." Section 69.5, subdivision (a)(1) states in pertinent part: "[A]ny person over the age of 55 years, or any severely and permanently disabled person, who resides in property that is eligible for the homeowners' exemption under . . . Section 218 may transfer, subject to the conditions and limitations provided in this section, the base year value of that property to any replacement dwelling of equal or lesser value that is located within the same county and is purchased or newly constructed by that person as his or her principal residence within two years of the sale . . . of the original property . . . ."

■ Unless the original residence and replacement residence qualify for a homeowner's property tax exemption, the tax basis of the original residence may not be transferred to the replacement residence. (§ 69.5, subd. (b)(2), (4).) Section 69.5, subdivision (a)(1) provides that a natural "person" (i.e., a person over the age of 55 years or a severely and permanently disabled person) may transfer the tax basis of his or her principal residence. " 'Person' means any individual, but does not include any firm, partnership, association, corporation, company, or other legal entity or organization of any kind." (§ 69.5, subd. (g)(11).)

■ Grotenhuis concedes that Corporation is the owner of record of the replacement residence but contends that he is the true "owner" and qualifies for a homeowner's property tax exemption and a base year value transfer. We reject the contention. Grotenhuis did not sell the original principal residence, did not purchase the replacement residence, and rents the replacement residence from Corporation.

### Stipulated Facts

Grotenhuis and his wife purchased a lot and structure on Padaro Lane in Carpinteria in 1994. They tore down the existing shack and built a house that was used as their principal residence. In 1999, Grotenhuis conveyed title to Corporation, of which Grotenhuis is the sole shareholder. County granted a homeowner's exemption on the Padaro Lane property, which was a mistake because Corporation was the owner of record.

In 2002 Grotenhuis refinanced the property, conveying title to himself and back to Corporation. Grotenhuis notified County that the transfer was to refinance the property and that the property should not be reassessed for tax purposes. County continued the homeowner's exemption even though Corporation was the owner of record.

In 2004, Corporation sold the Padaro Lane property for $5.05 million and bought a replacement residence on Ten Acre Road, Montecito which has an assessed value of $3.35 million. After title was taken in the corporation's name, Grotenhuis signed a backdated lease to rent the residence.

On April 22, 2005, Grotenhuis filed a claim to transfer the base year value of the Padaro Lane property which would entitle him to a $24,000-a-year reduction in property taxes on the Montecito residence. County denied the claim because Corporation was the owner of record of the original and replacement properties.

*Appeals Board Decision*

Grotenhuis alone appealed to the Santa Barbara County Appeals Board (Board) for an assessment reduction and tax refund. Grotenhuis offered imaginary deeds (corrective deeds) to show that he intended to qualify the Montecito residence for a base year value transfer. Grotenhuis, however, admitted that he was a tenant of the Padaro Lane property before it was sold. Grotenhuis also introduced evidence that he signed a 35-year lease on April 3, 2005, that was backdated to October 8, 2004 (the date the Montecito residence was purchased), to somehow show that the property was eligible for a homeowner's exemption.

Board denied the application for changed assessment and tax refund, rejecting Grotenhuis's mistake and estoppel arguments. It found that Grotenhuis was "sophisticated enough to know that corporate transfers of real property did not qualify for transfers of base year value . . . and that [he] did not inform the Assessor of this fact even though the corporation enjoyed the benefit of the homeowners exemption for about 6 to 7 years. Instead of supporting [his] claim for equitable relief, [his] continued enjoyment of the homeowners exemption when [he was] not entitled to it . . . undercut [his] claim for equitable relief."

*Tax Refund Complaint*

Grotenhuis and Corporation filed a complaint for a tax refund and asked the trial court to consider the administrative record and a joint statement of stipulated facts. (See § 5140.) The trial court ruled that Grotenhuis was the alter ego of Corporation and entitled to section 69.5 property tax relief. County was ordered to refund excess property taxes paid after October 8, 2004, but only if title to the Montecito residence is transferred to Grotenhuis. It also ordered that Grotenhuis is "entitled to receive continuing relief under Revenue & Taxation Code § 69.5 . . . providing the title remains in his name individually or as trustee." The trial court's theories, premised upon equitable considerations, are inapposite in the property tax context.

*Failure to Exhaust Administrative Remedies/Alter Ego*
*Standing*

■ "Ordinarily a taxpayer seeking relief from an erroneous assessment must exhaust available administrative remedies before resorting to the courts. [Citations.]" (*Stenocord Corp. v. City etc. of San Francisco* (1970) 2 Cal.3d 984, 987 [88 Cal.Rptr. 166, 471 P.2d 966].) It is uncontroverted that Corporation did not file a tax refund claim and was not identified as

an applicant in the administrative proceedings. The Board only reviewed Grotenhuis's claim as an individual. The trial court, however, found that Grotenhuis "<u>is</u> Grotenhuis Investments, Incorporated" and as "its president and sole owner, . . . represented himself and the company" in the administrative proceeding.

■ The trial court erred in relying on a corporate alter ego theory to confer standing. Grotenhuis's imaginative alter ego theory cannot be sustained. "The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests. [Citation.]" (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300 [216 Cal.Rptr. 443, 702 P.2d 601].) Grotenhuis has come to court claiming that the very corporation he formed should have its veil pierced so that he, as an individual, can obtain a tax advantage. "The essence of the alter ego doctrine is that justice be done." (*Id.*, at p. 301.) There is no injustice here. Grotenhuis's tax predicament was self-created by Grotenhuis.

■ Grotenhuis elected the corporate form for business reasons unrelated to tax. "He who takes the benefit must bear the burden." (Civ. Code, § 3521.) Grotenhuis should not be able to weave in and out of corporate status when it suits the business objective of the day. The laudatory goal of section 69.5 does not afford property tax relief to an individual who has made a business decision to transfer a residence to a corporation.

■ Section 5140 provides that a tax refund action may only be brought by the "person who paid the tax" and who exhausts his or her administrative remedies. The statutory limitation on standing in tax refund actions has existed since 1919. (*IBM Personal Pension Plan v. City and County of San Francisco* (2005) 131 Cal.App.4th 1291, 1302 [32 Cal.Rptr.3d 656].) "The statutory provisions could not be more clear: 'No other person may bring such an action; but if another should do so, judgment shall not be rendered for the plaintiff.' (§ 5140.)" (*Id.*, at p. 1304.)

■ Grotenhuis paid some of the property tax installments (approximately $17,500) and Corporation paid other property tax installments (approximately $35,000). There is no evidence that Corporation paid property taxes as the alter ego of Grotenhuis or that County invoked section 5140 to ignore what happened before the Board. (See, e.g., *CAT Partnership v. County of Santa Cruz* (1998) 63 Cal.App.4th 1071, 1081 [74 Cal.Rptr.2d 652] [§ 5140 not a bar where administrative decision listed and referred to corporate partner as applicant for tax relief].) "[W]here an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942].)

Stated another way, Grotenhuis may not sue to recover excess property taxes paid by someone else, such as his landlord, who pays the tax by design or mistake. (See, e.g., *Easton v. County of Alameda* (1937) 9 Cal.2d 301, 303 [70 P.2d 640] [no standing where tenant paid property taxes on behalf of owner].) The plain language of section 5140 compels the conclusion that Grotenhuis lacked standing to seek the refund of taxes paid by Corporation. (*IBM Personal Pension Plan v. City and County of San Francisco, supra*, 131 Cal.App.4th at p. 1304; *Mayhew Tech Center, Phase II v. County of Sacramento* (1992) 4 Cal.App.4th 497, 510 [5 Cal.Rptr.2d 702].)

*Alter Ego, Corporate Ownership, and Rental Status*

■ For reasons previously stated, the trial court also erred in ruling that Grotenhuis could transfer the base year value of the Padaro Lane property to the Montecito residence. In tax matters, a corporation and its stockholders are deemed separate entities. (*Rexall Drug Co. v. Peterson* (1952) 113 Cal.App.2d 528, 530 [248 P.2d 433].) "It is well established that corporate status will not be disregarded to facilitate tax avoidance. [Citations.]" (*Western States Bankcard Assn. v. City and County of San Francisco* (1977) 19 Cal.3d 208, 219 [137 Cal.Rptr. 183, 561 P.2d 273].)

■ Section 218, subdivision (b) provides that a homeowner's property tax exemption may not be granted to property that is rented. Nor can Corporation, as landlord of the Montecito residence, "occupy" the dwelling for purposes of the exemption. (§ 218, subd. (c)(2)(B)(i).) In order to transfer the tax basis of the Padaro Lane property, it has to be the principal residence of a person over the age of 55 years who was the owner of record "at the time of the sale of the original property." (§ 69.5, subd. (g)(1).) It is stipulated that Corporation, as the owner of record, sold the Padaro Lane property on June 18, 2004, and purchased the Montecito residence on October 8, 2004.

Although Grotenhuis claims that he is entitled to property tax relief, it is presumed that the owner of legal title, i.e., Corporation, is the owner of full beneficial title. (Evid. Code, § 662.) Grotenhuis rented the Padaro Lane property from Corporation, and as a tenant, "is not permitted to deny the title of his landlord at the time of the commencement of the relation." (Evid. Code, § 624.) Evidence Code section 624 is a conclusive presumption (see Evid. Code, § 620) which bars Grotenhuis from claiming that he is entitled to property tax relief as the alter ego of his landlord. (See, e.g., *Easton v. County of Alameda, supra*, 9 Cal.2d at pp. 302–303.)

*Estoppel*

Grotenhuis argues that County is estopped from denying a tax basis transfer because it failed to revoke the homeowner's property tax exemption.

Grotenhuis was granted a homeowner's exemption in 1994 and conveyed the property to Corporation in 1999, which should have ended the property tax exemption. County did not realize that a mistake had been made.

 Grotenhuis fails to explain how this estops County or why he has a right to transfer the tax mistake to the Montecito residence. Because "a suit for a refund of taxes is in the nature of an action in assumpsit, the plaintiff may recover only if it be shown that more has been exacted than in equity and good conscience should have been paid." (*Northrop Aircraft v. Cal. Emp. etc. Com.* (1948) 32 Cal.2d 872, 879 [198 P.2d 898].) Grotenhuis and Corporation profited from the mistake for six or seven years.

Grotenhuis argues that he justifiably relied on the tax mistake and had County set him straight, he would have conveyed the Padaro Lane property to himself before it was sold. We reject the argument on several grounds. Section 531.6 required that Grotenhuis notify County of any change in title affecting the homeowner's property tax exemption. He violated the statute in 1999 when he transferred the Padaro Lane property and in 2002 when he transferred the property to refinance the mortgage. Section 531.6 provides in pertinent part: "The taxpayer who has filed a claim for the homeowners' exemption which has not been denied by the assessor is responsible for notifying the assessor when the property is no longer eligible for the exemption."

A section 531.6 notice was also printed on each secured property tax statement and warned that Grotenhuis must notify County of any ownership change.[3] It can be inferred that Grotenhuis was aware of the reporting requirement when he advised County in 2002 that the Padaro Lane property was transferred to refinance the mortgage. Grotenhuis argues that his 2002 letter satisfies section 531.6 but the letter does not mention the homeowner's exemption and states that Grotenhuis was currently the owner of record.

The Board found that County was not estopped, a finding that was not controverted at trial. Grotenhuis conceded that "I don't think we can prevail on an estoppel theory," which is a fair summary of the evidence. Grotenhuis

---

[3] The secured property tax statements state in pertinent part: "**HOMEOWNER'S EXEMPTION REQUIREMENTS**: If you filed a claim for the Homeowner's Property Tax Exemption, you declared under penalty of perjury that you are the owner of this property and that it is your principal place of residence. You are required by law to terminate this claim if either or both of the following events occur . . . : (1) ownership of the property transfers to another party, (2) your principal place of residence changes to another location. If you are not eligible for the exemption . . . , you must notify the County Clerk-Record-Assessor's Office in writing, . . . or you will be subject to payment of the amount of taxes the exemption represents plus applicable penalties and interest. If you have questions regarding the Homeowner's Exemption, please contact the County Clerk-Record-Assessor's Office."

never asked County whether the 1999 and 2002 conveyances would affect the homeowner's property tax exemption. Grotenhuis further admits that County never discussed transfer rights with him or told him that Corporation could claim a homeowner's property tax exemption.

 Where questions of fact are resolved in an administrative proceeding, they are reviewed for substantial evidence. (*CAT Partnership v. County of Santa Cruz, supra,* 63 Cal.App.4th at p. 1079.) Equitable estoppel would only apply if there was a representation or concealment of a material fact by County, made with the intention to induce Corporation to sell the Padaro Lane property and purchase the Montecito residence, and Grotenhuis justifiably relied on County's representation or concealment. (See *City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 493 [91 Cal.Rptr. 23, 476 P.2d 423]; see also *Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1316–1317 [104 Cal.Rptr.3d 195, 223 P.3d 57].) The mere failure to enforce the law, without more, does not estop the government from subsequently enforcing it. (*Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1369 [56 Cal.Rptr.3d 591].)

*Conclusion*

 The corporate alter ego theory, which is generally used to prevent a fraud and impute liability, lies "only in narrowly defined circumstances and only when the ends of justice so require." (*Mesler v. Bragg Management Co., supra,* 39 Cal.3d at p. 301.) Grotenhuis cites no authority that the corporate alter ego theory may be invoked to gain a tax advantage in violation of section 69.5. The estoppel argument is premised on a "mistake" induced by Grotenhuis who violated a statutory duty to report transfers affecting the homeowner's property tax exemption. (§ 531.6.) Grotenhuis's web of complex conveyances between various entities which included leasebacks and imaginary deeds may not be used to secure favorable tax treatment not authorized by statute. It is well settled that "[n]o one can take advantage of his own wrong," but Grotenhuis did just that for six or seven years. (Civ. Code, § 3517.)

Grotenhuis claims that County, as a matter of equity and fairness, has a duty to transfer the tax basis of the Padaro Lane property to the new residence. To do so would compound the mistake and reduce the property taxes on the Montecito residence $24,000 a year. It would result in a tax windfall based on farfetched estoppel theories that lack evidentiary support.

In *Penner v. County of Santa Barbara* (1995) 37 Cal.App.4th 1672 [44 Cal.Rptr.2d 606], we held that a taxpayer could not undo the adverse tax consequences of a transaction "by pretending that she took steps which, in reality, she did not." (*Id.,* at p. 1679.) The same principle applies here.

Having transferred the Padaro Lane property to Corporation before it was sold, Grotenhuis " 'must accept the tax consequences of [his] choice whether contemplated or not . . . and may not enjoy the benefit of some other route [he] might have chosen to follow but did not.' [Citation.]" (*Ibid.*, citations omitted.)

The judgment is reversed. County is awarded costs on appeal.

Gilbert, P. J., and Coffee, J., concurred.