Filed 1/23/14  Boisvert v. County of Alameda etc. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RENE BOISVERT,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF ALAMEDA, ALAMEDA COUNTY OFFICE OF THE ASSESSOR, ALAMEDA COUNTY APPEALS BOARD,<br><br>    Defendants and Respondents. | A138190<br><br>(Alameda County<br>Super. Ct. No. RG12617211) |

Plaintiff Rene Boisvert appeals in propria persona from the trial court's grant of summary judgment against him in a tax assessment dispute with Alameda County.  The trial court concluded that Boisvert lacked standing and the court lacked jurisdiction.  Because Boisvert's argument fails to articulate any errors committed by the trial court when it granted summary judgment, we affirm.

**Background**

In an amended complaint filed in May 2012, Boisvert sued the County of Alameda, its tax assessor, and Assessment Appeals Board (collectively hereafter as "the County") seeking a tax refund.  He claimed the County wrongly assessed a taxable value of $339,600 for three parcels of adjacent real property he described as "13,300 square feet of vacant, toxic contaminated land" located in Oakland (hereafter "the Property").  A limited liability company named "800 Center LLC" (hereafter "800 Center") owned the

1

Property, and Boisvert claimed to be its "managing member." He alleged that he paid all assessed taxes on the Property.

Boisvert alleged the County's assessment methodology was flawed by "failing to properly account for the full reduction in market value caused by certain toxic contamination" on the Property. He claimed that he appealed to the County's Assessment Appeals Board each September from 2007 through 2011 for a change in assessment (Rev. & Tax. Code, § 1603)[1] for the Property for fiscal tax years 2005-2006 through 2009-2010. He claimed his challenges to assessments for tax years 2005-2006 through 2008-2009 were denied, but the County granted his fifth application and reduced the assessed value of the land to $245,000 for year 2009-2010. He was not issued a refund for any preceding years. Boisvert sought a retroactive reduction of the Property's assessed value for years 2005-2006 through 2008-2009 to $0, a refund of $38,762.17 in excess taxes paid, and litigation expenses. He included copies of three County-issued tax statements as exhibits to his complaint.

On September 18, 2012, the County moved for summary judgment, alleging it was undisputed that Boisvert failed to state a cause of action. Specifically, the County claimed Boisvert had not paid the taxes on the Property as required by section 5140[2], he failed to exhaust administrative remedies as required by section 5142,[3] and the court had no power to grant the relief he requested per section 4807.[4]

---

[1] All statutory references are to the Revenue and Taxation Code unless otherwise noted.

[2] Section 5140, titled "Standing to bring action against city or county for tax refund," states in pertinent part: "[t]he person who paid the tax . . . may bring an action only in the superior court . . . against a county or a city to recover a tax which the board of supervisors of the county or the city council of the city has refused to refund on a claim filed pursuant to Article 1 (commencing with Section 5096) of this chapter. No other person may bring such an action; but if another should do so, judgment shall not be rendered for the plaintiff."

[3] Section 5142, subdivision (a), states in pertinent part: "[n]o action shall be commenced or maintained under this article . . . unless a claim for refund has first been filed."

[4] Section 4807 states in pertinent part: "[n]o injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against any county, municipality, or district, or any officer thereof, to prevent or enjoin the collection of property taxes sought to be collected."

The County supported its claim that Boisvert never paid the Property's taxes with a declaration from Julia Manaois, a County Treasurer Tax Collection supervisor, who had examined the tax collection records for the Property. Manaois stated that 800 Center or "title or mortgage companies" paid the Property's taxes for tax fiscal years 2005-2006 through 2008- 2009. Copies of deposited checks, County collection ledgers, and payment receipts were included as exhibits to her declaration. Of the 14 checks tendering payment of taxes, the Old Republic Title Company issued five, the Herzer Financial Mortgage Fund issued three, and 800 Center issued six, signed by Boisvert. The County also offered the declaration of the chief appraiser for the Assessor's Office, who reviewed County records and stated that ownership of the Property was transferred to 800 Center in 2005 and 2006.

To show that Boisvert had failed to exhaust administrative remedies, the County offered a declaration from Cheryl Perkins, Assistant Clerk of the County's Board of Supervisors, the office responsible for processing applications for changed assessments and claims for refunds for the Assessment Appeals Board. Perkins examined County records and located all applications for the Property for 2005 through 2011, which were attached as exhibits. Applications for changed assessment for the Property were filed by Boisvert for tax years 2008-2009, 2009-2010, and 2010-2011, but not for 2005-2006, 2006-2007, and 2007-2008.

The 2008 applications for changed assessment were rejected because they were not timely filed. The Assessment Appeals Board issued findings and conclusions for the 2009-2010 and 2010-2011 applications after hearing testimony from County appraisers and Boisvert. The form applications Boisvert completed and submitted all included sections asking "Do you want to designate this application as a claim for refund?" to which Boisvert answered "No" on each one. Moreover, Perkins also confirmed that no refund claims had been "filed on the Property for any tax years on or after 2005-2006."

On November 29, 2012, Boisvert opposed the motion for summary judgment and filed a separate statement of disputed and undisputed facts. Boisvert argued summary judgment was improper because there were triable issues of fact. In his memorandum, he argued the County's improper valuation, improper taxation, and a failure to refund taxes. Boisvert disputed six statements of fact made by the County, which related to property valuation, filing periods, refund request claims, and the Assessment Appeals Board's hearings and decisions.

Boisvert supported his opposition with three exhibits and a declaration. Exhibit A was a County response to a discovery request for admission regarding appraisal methods, which Boisvert claimed showed improper valuation. Exhibit B was a transcript from an Assessment Appeals Board hearing, which he claimed showed that he made oral requests for refunds. Exhibit C was a 40-page portion of a treatise on contaminated property valuation. In his declaration, Boisvert made claims about purchasing and renovating the Property, its contamination, improper valuation by the County, and his efforts to correct and appeal the assessment. He described filing six applications to change the Property's assessed value and two hearings he attended before the Assessment Appeals Board.

In reply, the County argued Boisvert had failed to demonstrate there was any factual controversy about his taxpayer status or exhaustion of administrative remedies. The County also made 20 objections to the evidence presented by Boisvert. First, it objected that its response to the request for admission, exhibit A, was not properly lodged with the court, was hearsay, and was discovery improperly sought. Next, it objected that exhibits B and C, the transcript of the Appeals Board hearing and the treatise on property valuation, were not authenticated, not properly lodged with the court, irrelevant to the motion, and were hearsay. The court sustained the objections to exhibits A, B and C. The County also made 17 objections to individual paragraphs in Boisvert's declaration, arguing his assertions were hearsay, irrelevant, not material, and lacked of foundation. Of those, the court sustained 11 and overruled six.

4

On December 18, 2012, the court held a hearing on the motion and granted summary judgment on standing and jurisdictional grounds. It stated that the evidence Boisvert offered in his opposition was "largely incompetent" and that he had not met his burden of establishing triable issues of fact. The court concluded that it was undisputed that 800 Center had owned and paid taxes on the Property, even though Boisvert signed checks on behalf of 800 Center. Because Boisvert had not paid the taxes, he was not authorized to bring an action in superior court for a refund under section 5140, as interpreted by *Grotenhuis v. County of Santa Barbara* (2010) 182 Cal.App.4th 1158.

Even though Boisvert lacked standing, the court went on to conclude it lacked jurisdiction because it was undisputed that Boisvert had not filed a claim for a tax refund (§ 5142) and therefore Boisvert had not exhausted administrative remedies required by sections 5097[5] and 5097.02.[6] The assessment change applications Boisvert submitted were not evidence of a claim for refund because Boisvert answered "no" on sections of the form asking him if he sought a refund. Further, the unauthenticated transcript portions from his appeals hearings were neither admissible nor competent to show Boisvert had requested a refund because the oral requests did not comply with writing and verification requirements in sections 5097 and 5097.02. Additionally, the court concluded that it lacked jurisdiction under section 4807 to grant the relief sought by Boisvert.

On January 7, 2013, the court dismissed Boisvert's lawsuit with prejudice. Boisvert timely appealed from the judgment.

## Discussion

Summary judgment was granted against Boisvert on the grounds that he lacked standing to bring the lawsuit and the court lacked jurisdiction to hear the case or grant

---

[5] Section 5097 sets forth application steps and filing requirements for refunds.

[6] Section 5097.02 states in pertinent part that claims for tax refunds "shall be in writing" and must specify the portions of the assessment that are claimed void and "[t]he grounds on which the claim is founded."

relief. Our role is to review the correctness of the trial court's judgment based on the matters that were before the trial court. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) However, the judgment is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) The burden is on Boisvert to affirmatively show where and how the trial court erred when it concluded there was no standing or jurisdiction and granted summary judgment. (See *In re Kathy P.* (1979) 25 Cal.3d 91, 102)

Summary judgment is intended to "provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) When a defendant moves for summary judgment, "contend[ing] that the action has no merit" (Code Civ. Proc., § 437c, subd. (a)), it must support its motion with evidence, including "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice [must] or may be taken." (Code Civ. Proc., § 437c, subd. (b).) The party opposing the motion must produce the same type of evidentiary support to show that a triable issue does exist. (*Ibid.*) The trial court must "consider all of the evidence" and "all [of the] inferences" reasonably drawn therefrom (Code Civ. Proc., § 437c, subd. (c)), and "view such evidence in the light most favorable to the opposing party." (*Aguilar, supra*, 25 Cal.4th at p. 843.) Summary judgment must be granted "if all the papers submitted show that there is no triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).)

Our de novo review of the trial court's grant of summary judgment is limited to "the record before the trial court when it granted defendant's motion for summary judgment," and we consider "all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained." (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65-66.) Stated another way, we only consider evidence admitted by the trial court when it rendered its decision. But, we examine "the

evidence in the light most favorable to the nonmoving party." (*Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758, 764.)

Here, the County moved for summary judgment, claiming Boisvert had no standing to bring the lawsuit in court because he was not the Property's taxpayer. Standing is legally significant because only actual taxpayers may seek refunds for taxes paid. (See *Woosley v. State of California* (1992) 3 Cal.4th 758, 789; See also *Easton v. County of Alameda* (1937) 9 Cal.2d 301, 303-304.) For support, the County introduced declarations and accompanying records from Assessor's office and Treasurer Tax Collector officials that showed 800 Center was the Property's legal owner and there was no record Boisvert had ever paid taxes on the Property. Boisvert did not present any evidence to rebut the County's showing that he had not paid the taxes.[7] The only evidence he introduced was largely inadmissible and addressed only the merits of his underlying claim. The trial court "considered all the evidence, papers and arguments" of both parties and concluded that "[w]hile Plaintiff may have signed checks on behalf of the entity that owed taxes, the uncontroverted evidence reveals that Plaintiff has no standing to bring the claims alleged or have judgment rendered in his favor."

On appeal, Boisvert must show where the trial court committed error when it reviewed the evidence and arguments before it and concluded that there were no triable issues of fact about his status as a taxpayer. (*Lennane v. Franchise Tax Bd.* (1996) 51 Cal.App.4th 1180, 1189.) Boisvert has not carried his burden.[8] Instead, he has attempted to frame the issue before us as "whether the assessment appeals board erred in its methodology in valuing certain contaminated real estate." His appeal focuses exclusively

---

[7] The record submitted to this court did not include a transcript of the December 18, 2012 hearing so we are not aware of arguments Boisvert made beyond his written opposition to summary judgment.

[8] The trial court also concluded that there was no triable issue about whether it lacked jurisdiction to consider the case and grant relief. Boisvert's appellate arguments entirely ignore the issue of jurisdiction. However, we need not address jurisdiction because standing alone is dispositive. (See § 5140; see also *IBM Personal Pension Plan v. City and County of San Francisco* (2005) 131 Cal.App.4th 1291, 1304-1305.)

on the substantive merits of the tax assessment dispute.  He also makes repeated reference to facts and evidence, such as the Appeals Board hearing transcript,  that were not admitted by the trial court. (*Johnson v. City of Loma Linda, supra,* 24 Cal.4th at pp. 65-66.)  The form and substance of his arguments suggest that Boisvert misunderstands the distinction that trial courts decide questions of fact and appellate courts decide questions of law.  (*In re Zeth S., supra,* 31 Cal.4th at p. 405.)  Nevertheless, our role here is not to explore the merits of Boisvert's case about contaminated property, but rather, our review examines the determination of his standing as a taxpayer.

Boisvert has presented no argument that the trial court erred in concluding he had no standing as a taxpayer to bring his lawsuit against the County.  Thus, we affirm.

**Disposition**

The judgment is affirmed.


_____

Siggins, J.


We concur:


_____

McGuiness, P.J.


_____

Jenkins, J.

8