Filed 3/29/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RICHARD S. WRIGHT et al., | |
|      Plaintiffs and Appellants, | A153687 |
| v. | |
| COUNTY OF SAN MATEO, | (San Mateo County |
|      Defendant and Respondent. | Super. Ct. No. CIV531406) |

Revenue and Taxation Code[1] section 69.5, which implements Proposition 60, enacted by voters in 1986, allows qualified homeowners over 55 years of age to transfer the property tax basis of their principal residence to a replacement dwelling of equal or lesser value in the same county. (Stats. 1987, ch. 186, § 1; Cal. Const., art. XIII A, § 2, subd. (a).) The purpose of the legislation is to provide tax relief to qualified homeowners. (*Ibid.*)

Here, the County of San Mateo (county) determined that plaintiffs Richard S. Wright and Susan M. Hansch, who are otherwise qualified under the statute, are not entitled to transfer the property tax basis from their original home to a newly constructed replacement home because they formed a limited liability company (LLC) to purchase the land on which they installed the manufactured replacement home that they purchased. Plaintiffs brought this action challenging the county's determination, and the trial court granted the county's motion for summary judgment. The court reasoned that the use of the LLC to construct the replacement home precluded plaintiffs' claim for tax relief as a matter of law. On appeal, plaintiffs argue, among other things, that the court erred in

---

[1] All statutory references are to the Revenue and Taxation Code unless otherwise noted.

1

granting the county's motion because they, rather than the LLC, constructed the replacement home. We agree and, accordingly, shall reverse the judgment.

## Background

*Section 69.5*

Section 69.5 "has been aptly described as 'extraordinarily complex' with 'pages of dense, convoluted and interrelated provisions.' " (*Wunderlich v. County of Santa Cruz* (2009) 178 Cal.App.4th 680, 695.) Under subdivision (a)(1), "any person over the age of 55 years . . . who resides in property that is eligible for the homeowners' exemption under subdivision (k) of Section 3 of Article XIII of the California Constitution and Section 218 may transfer, subject to the conditions and limitations provided in this section, the base year value of that property to any replacement dwelling of equal or lesser value that is located within the same county and is *purchased or newly constructed by that person as his or her principal residence* within two years of the sale by that person of the original property . . . ." (Italics added.) A "person" eligible for transfer under section 69.5 "means any individual, but does not include any firm, partnership, association, corporation, company, or other legal entity or organization of any kind." (§ 69.5, subd. (g)(11).)[2] The term "newly constructed" is defined in relevant part as "Any alteration of land or of any improvement, including fixtures, since the last lien date that constitutes a major rehabilitation thereof or that converts the property to a different use." (§ 70, subd. (a)(2).) A "replacement dwelling" is "a building, structure, or other shelter constituting a place of abode, whether real property or personal property, that is owned and occupied by a claimant as his or her principal place of residence, and any land owned

---

[2] The definition of "person" was added to section 69.5 in 1990 (Stats. 1990, ch. 1494, § 3.7) to address concerns that had arisen in the implementation of section 69.5 as a result of the definition of a person in section 19, as including "any person, firm, partnership, association, corporation, . . . or organization of any kind." Because "a claimant is defined as any 'person,' businesses have questioned whether or not they are eligible for these tax benefits. This bill clarifies legislative intent that only individuals may transfer an original base year value to a replacement residence." (Assem. Bill No. 3723, 3d reading April 24, 1990 (1989-1990 Reg. Sess.) p. 3.)

by the claimant on which the building, structure, or other shelter is situated." (§ 69.5, subd. (g)(3).) In addition to meeting the requirement of subdivision (a), "any person claiming the property tax relief provided by this section" must also, among other things, "[a]t the time of claiming the property tax relief . . . [be] an owner of a replacement dwelling and occup[y] it as his or her principal place of residence." (§ 69.5, subd. (b)(4).)

*Undisputed Facts*

On June 2010, plaintiffs arranged for the purchase of an unimproved lot in the City of Half Moon Bay (the lot), within San Mateo County, which, after installation of a manufactured home, they intended to be their primary residence. During escrow, the lender informed plaintiffs that it would not issue a construction loan unless title to the lot were held by a LLC. Accordingly, plaintiffs formed a LLC, and title to the lot was taken in the name of the LLC. Thereafter, plaintiffs entered into a contract with a company in Utah for the purchase of a manufactured home. The manufactured home was installed on the lot in January 2012.

In the meantime, in September 2011, plaintiffs sold their primary residence in the City of Belmont, also in San Mateo County.

In January, after installation of the new residence was completed, plaintiffs' complaint alleges, "title to the lot with the new residence" was transferred from the LLC to plaintiffs. Plaintiffs obtained an exemption from payment of the real property transfer tax under section 62, subdivision (a)(2), for the transfer of title from the LLC to plaintiffs because their proportional ownership interests in the lot were the same as their ownership interests in the LLC (i.e., 50 percent for each spouse). Plaintiffs also filed a request to transfer the base year value of the Belmont property to the Half Moon Bay property pursuant to section 69.5. The request was denied and plaintiffs filed an appeal with the county assessment appeals board (appeals board).

Plaintiffs argued to the appeals board that at all relevant times they had equity in the replacement dwelling as a result of the personal funds they advanced for the lot purchase, the purchase of the manufactured home, and their payment for the installation

3

of the home on the lot. They argued further that at the time they filed their claim under section 69.5, subdivision (a), they were the owners of the replacement dwelling and were occupying it as their principal place of residence. The appeals board noted that while it was "not unsympathetic" to plaintiffs' situation, under the unambiguous language of section 69.5 and the undisputed facts, plaintiffs were not entitled to relief. The decision by the appeals board states, "For purposes of this appeal, the parties have agreed that applicants satisfy the age requirement and that (1) the replacement dwelling is of equal or lesser value than the original property, and (2) the replacement dwelling is located within the same county as the original property. Applicants would therefore be entitled to transfer the base year value of the original property if they had performed all transactions themselves instead of through the LLC. The only issue is whether, given the involvement of the LLC in the acquisition and construction of the replacement dwelling, applicants have satisfied the requirement that the replacement dwelling be 'purchased or newly constructed by *that person*.' " The appeals board explained that although plaintiffs "advanced some amount of personal funds for construction" of the home, because the lender "provided construction financing to the LLC" and the "LLC was issued a building permit" for installation of the home on the lot, the LLC constructed the replacement dwelling within the meaning of the statute.[3] The board acknowledged that neither plaintiffs nor the county "identified any authority that specifically addresses [this] unique factual situation," nor was it aware of any authority. Nonetheless, the board relied on *Grotenhuis v. County of Santa Barbara* (2010) 182 Cal.App.4th 1158 for the proposition that "for purposes of property tax relief, the legal distinctions between corporate entities and their owners are to be respected and enforced."

---

[3] The appeals board explained, "The fact that [plaintiffs'] personal assets were utilized for construction does not compel the conclusion that [plaintiffs] as individuals had a formal or legal role in construction. [Plaintiffs'] financial inputs, for example, might be best understood as contributions to the LLC by its members. . . . Without more, [plaintiffs'] financial contributions alone are insufficient to support disregarding the LLC's formal role in carrying out the new construction."

4

Plaintiffs filed the present action seeking a refund of property taxes paid following the denial of their appeal by the appeals board. The county moved for summary judgment on the ground that plaintiffs had admitted that they purchased and newly constructed the property by and through the LLC. The trial court agreed and granted the county's motion. Plaintiffs timely filed a notice of appeal.[4]

## Discussion

1. *Summary Judgment Law and Standard of Review*

Summary judgment is appropriate when all of the papers submitted show there is no triable issue of material fact and the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment has the initial burden of showing that a cause of action is without merit. A defendant bears that burden by showing that one or more elements of the cause of action cannot be established, or that there is a complete defense thereto. (Code Civ. Proc., § 437c, subd. (p)(2).) If the defendant makes such a showing, the burden shifts to the plaintiff to produce evidence demonstrating the existence of a triable issue of material fact. (*Ibid.*) "On appeal from a summary judgment, our task is to independently determine whether an issue of material fact exists and whether the moving party is entitled to summary judgment as a matter of law." (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.)

2. *The court erred in granting summary judgment.*

The county moved for summary judgment on the ground that plaintiffs do not qualify for relief under the statute because the replacement dwelling was "purchased and newly constructed" by the LLC. As the appeals board recognized, the effect on plaintiffs'

---

[4] Plaintiffs purport to appeal from the court's non-appealable order granting the county's motion for summary judgment. According to plaintiffs, no judgment has been entered. In the interests of justice and to avoid delay, we construe the order as a judgment for the county. (*Avila v. Standard Oil Co*. (1985) 167 Cal.App.3d 441, 445.)

5

claim of the LLC's role in constructing the replacement dwelling presents a question of law.

"The interpretation of constitutional or statutory provisions presents a legal question, which we decide de novo. [Citation] Our task is to ascertain the intent of the electorate or the Legislature, thereby giving effect to the law's purpose. [Citation.] [¶] We begin by examining the language of the relevant provisions. [Citation.] Where 'intent is expressed in unambiguous terms, we must treat the statutory language as conclusive; "no resort to extrinsic aids is necessary or proper." ' [Citations.] [¶] On the other hand, where 'the provision's words are ambiguous and open to more than one meaning, we consult the legislative history, which in the case of article XIII A is the ballot pamphlet.' [Citation.] [¶] 'In cases of ambiguity we also may consult any contemporaneous constructions of the constitutional provision made by the Legislature or by administrative agencies.' [Citation.] As to the latter, however, 'the binding power of an agency's interpretation of a statute or regulation is contextual: Its power to persuade is both circumstantial and dependent on the presence or absence of factors that support the merit of the interpretation.' [Citation.] [¶] 'Finally, the court may consider the impact of an interpretation on public policy . . .' when construing an ambiguous provision. [Citation.] Absurd results are to be avoided." (*Wunderlich v. County of Santa Cruz, supra,* 178 Cal.App.4th at p. 694.)

Here, plaintiffs contend that they purchased and constructed the replacement dwelling, albeit in part with the temporary use of an LLC, and that when they submitted their claim, they alone owned and occupied the home as their principal place of residence. Plaintiffs explained that the LLC was formed to enable them to obtain the construction loan and that they intended at all times to transfer ownership of the lot to themselves once construction was complete. While the LLC obtained the construction loan, plaintiffs also contributed personal funds to both the purchase of the lot and the purchase and installation of the manufactured home. The evidence in the record shows that the lot was purchased for $675,000 and the manufactured home was assessed by the county at a value of $450,000. According to plaintiffs, "The LLC in the course of

6

building the property incurred $380,000 in construction debt and $249,316 in land debt. . . . [Plaintiffs] paid the balance of the land and construction costs personally." In opposition to the county's motion for summary judgment, plaintiffs submitted copies of cancelled personal checks signed by plaintiffs in the total amount of $18,712.85 for excavation, grading and paving to prepare the lot and a copy of the signed contract under which they personally purchased the manufactured home from the builder.[5] Plaintiffs made all arrangements for the delivery and installation of the home on the lot. On these facts, the replacement dwelling was "newly constructed" by plaintiffs.

The contrary conclusion reached by the appeals board is based on an unnecessarily strained interpretation of the statute. The appeals board found that, despite plaintiffs' financial contributions and personal effort, they did not have a "formal or legal role" in the construction. Section 69.5, however, does not require that plaintiffs have any such role. It requires that they "purchase or newly construct" the replacement home. Given the considerable restrictions expressly provided in the statute, we discern no justification for implying additional requirements. Nothing in section 69.5 requires that plaintiffs own the lot during construction. The statute requires only that they own the replacement home "at the time of claiming the property tax relief." Plaintiffs would not be entitled to tax relief if title to the property had still been held by the LLC when they submitted their claim for relief—not because the LLC constructed the home but because plaintiffs would not have been the owners of the replacement dwelling at the point required by section 69.5, subdivision (b)(4).

---

[5] The county argues that we should disregard the signed contract with the manufacturer because it was not presented to the appeals board. Due to the procedural posture of this case, the record of the appeals board proceedings is not before this court, so that we cannot determine what was or was not presented in those proceedings. Moreover, the county failed to file a proper evidentiary objection to consideration of the contract. (Cal. Rules of Court, rule 3.1354(b) ["All written objections to evidence [in support of or in opposition to a motion for summary judgment] must be served and filed separately from the other papers in support of or in opposition to the motion."].) There was thus no basis to exclude the contract from consideration in ruling on the summary judgment motion.

*Grotenhuis v. County of Santa Barbara, supra,* 182 Cal.App.4th 1158, relied on by the county, is distinguishable. In that case, the plaintiff sought to transfer the base year value of his former residence to a new residence, both of which were owned by a corporation, of which he was the sole shareholder. (*Id.* at p. 1161.) Because Grotenhuis had neither sold the original property nor purchased and owned the replacement property, to obtain tax relief under the statute he argued that he was the alter ego of the corporation. (*Id.* at p. 1163.) The court rejected this argument, explaining, "In tax matters, a corporation and its stockholders are deemed separate entities. [Citation.] 'It is well established that corporate status will not be disregarded to facilitate a tax avoidance.' " (*Id.* at p. 1165.) The court added, "Grotenhuis elected the corporate form for business reasons unrelated to tax. . . . Grotenhuis should not be able to weave in and out of corporate status when it suits the business objective of the day. The laudatory goal of section 69.5 does not afford property tax relief to an individual who has made a business decision to transfer a residence to a corporation." (*Id.* at p. 1164.)

Here, plaintiffs have met all the requirements of section 69.5. They sold their original property and constructed a replacement property which, at the time of their claim, they owned and occupied as their primary residence. They are precisely the persons for whom the statute was intended to provide property tax relief. The fact that, to satisfy a bank requirement, they made temporary use of an LLC before taking title to their replacement property provides no justification under the terms of the statute or in logic or fairness for denying them the relief provided by section 69.5. We emphasize that our conclusion would be different if title to the property had remained in the name of the LLC when the claim under section 69.5 was submitted.

Since plaintiffs did not file their own motion for summary judgment, we are without authority to direct the entry of judgment in their favor. However, we shall reverse the judgment entered in favor of the county and remand for further proceedings consistent with this opinion.

**Disposition**

The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion. Plaintiffs shall recover their costs on appeal.

_____
POLLAK, P. J.

WE CONCUR:

_____
STREETER, J.

_____
BROWN, J.

A153687

9

Trial court: San Mateo County Superior Court

Trial judge: Honorable Richard H. Du Bois

Counsel for plaintiffs and appellants: Charles H. Rible

Counsel for defendant and respondent: John C. Beiers
Rebecca M. Archer

A153687