Filed 8/26/24 Nationwide Trans v. Cal. Unemployment Insurance Appeals Bd. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| NATIONWIDE TRANS, INC., | C098435 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2021-80003667-CU-WM-GDS) |
| v. | |
| CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD et al., | |
| Defendants and Respondents. | |

Nationwide Trans., Inc. (Nationwide), sought a writ of mandate ordering the California Unemployment Insurance Appeals Board (the Appeals Board) to set aside its decision upholding a large tax assessment levied against it by the Employment Development Department (EDD). The Appeals Board and EDD demurred, and the trial court sustained the demurrer without leave to amend on two grounds: (1) Nationwide failed to allege it had exhausted all available administrative remedies by filing a claim for refund with EDD and obtaining a final decision from the Appeals Board on that claim; and (2) writ relief was not available because Nationwide had an adequate remedy at law

1

(namely, a lawsuit for a refund *after* filing a claim for refund and exhausting all administrative remedies related to that claim). Nationwide appeals from the judgment of dismissal. We affirm the trial court's order as to all causes of action challenging the assessment and the Appeals Board's decision upholding it. However, we find Nationwide should have been granted leave to amend one discrete cause of action challenging charges to its reserve account.

## FACTUAL AND PROCEDURAL BACKGROUND

Because we are reviewing a judgment entered following the sustaining of a demurrer, we take the factual background from the allegations in the petition and the exhibits attached thereto. (*Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659, 665.)

Nationwide is a motor carrier that utilizes the services of truck drivers to transport goods. Most of its drivers own and operate their own trucks. Nationwide classified all of its drivers as independent contractors. In 2010, it was audited by EDD. The audit concluded those drivers who owned and operated their own trucks were independent contractors, but those who did not were employees. No penalties were assessed for the misclassification of some drivers because the auditor found Nationwide had a reasonable belief they were independent contractors. Nationwide did not challenge the results of this audit, and it is not at issue here.

In 2018, EDD audited Nationwide again. This time, EDD concluded *all* of Nationwide's drivers were employees rather than independent contractors, and it was thus liable for paying or withholding payroll taxes on or from their wages. As a result of the audit, EDD assessed Nationwide over $2 million in unpaid payroll taxes, penalties, and interest.

Nationwide filed a petition for reassessment, contending all of its drivers were independent contractors, and even if they were employees, the amount of the assessment

2

was incorrect and penalties and interest should be waived because it had a good faith belief the drivers were independent contractors.

A three-day evidentiary hearing was held before an administrative law judge (ALJ). The ALJ found all of Nationwide's drivers were employees rather than independent contractors and penalties were appropriate because the first audit found some drivers were employees and Nationwide was thus negligent in continuing to classify all drivers as independent contractors. The ALJ thus affirmed the assessment in full.

Nationwide appealed the ALJ's decision to the Appeals Board, which affirmed the ALJ's decision and denied the petition for reassessment.

Nationwide thereafter filed a petition for writ of mandate challenging the Appeals Board's decision. The petition alleged the drivers were properly classified as independent contractors, and the Appeals Board's findings to the contrary are not supported by the evidence. It also alleged the Appeals Board failed to proceed in the manner required by law because the assessment exceeded the three-year period provided by section 1132 of the Unemployment Insurance Code,[1] and the amount was based on gross income rather than net income as required by sections 929 and 13009. Finally, it alleged Nationwide had a reasonable belief its drivers were independent contractors based on the results of the first audit. Based on these allegations, Nationwide sought a writ of mandate directing the Appeals Board to set aside its decision and adjust the assessment accordingly. We note the relevant pleading is the first amended petition, and it included an allegation that Nationwide paid the assessment in full sometime after the original petition was filed.

The bulk of the petition — and six of its seven causes of action — concerned Nationwide's challenge to the assessment and the Appeals Board's decision denying its

---

[1] Further undesignated statutory references are to the Unemployment Insurance Code.

petition for reassessment. However, the petition also alleged one of Nationwide's drivers filed a claim for unemployment insurance (UI) benefits and Nationwide contested the claim, but its reserve account was charged without a hearing. One cause of action (the fourth) was based on these discrete allegations.

The EDD and the Appeals Board (collectively respondents) demurred to the petition on three grounds: (1) article XIII, section 32 of the California Constitution and section 1851 of the Unemployment Insurance Code prohibit the issuance of a writ of mandate to prevent or enjoin the collection of any tax; (2) Nationwide failed to exhaust its administrative remedies by first paying the assessment and then filing a claim for a refund and obtaining a final decision from the Appeals Board regarding that claim; and (3) the challenged decision was not subject to review by petition for writ of mandate because an adequate remedy at law existed (namely, a suit for a refund). The trial court overruled the demurrer on the first ground because the petition alleged Nationwide paid the assessment in full after the action was originally filed, and the action was thus not one to prevent or enjoin the collection of a tax. However, it sustained the demurrer on the second and third grounds as to the causes of action challenging the assessment, and on the second ground as to the cause of action challenging the charges to Nationwide's reserve account. It also denied leave to amend, explaining it had "previously sustained the demurrer to the original petition on the same grounds, namely, the unavailability of writ of mandate in challenges to tax assessments and the failure to exhaust administrative remedies. [Nationwide] failed to cure those defects by amendment, and it does not appear that it will be able to do so with an additional opportunity to amend." It thereafter entered a judgment of dismissal, and this appeal followed.

## DISCUSSION

## I

### *Standard of Review*

"A demurrer tests the legal sufficiency of the complaint, and the granting of leave to amend involves the trial court's discretion. Therefore, an appellate court employs two separate standards of review on appeal. [Citations.] First, the complaint is reviewed de novo to determine whether it contains sufficient facts to state a cause of action. [Citation.] In doing so, we accept as true the properly pleaded material factual allegations of the complaint, together with facts that may be properly judicially noticed. Reversible error exists only if facts were alleged showing entitlement to relief under any possible legal theory." (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.)

"Second, where the demurrer is sustained without leave to amend, [we] determine whether the trial court abused its discretion in doing so. [Citations.] On review of the trial court's refusal to grant leave to amend, we will only reverse for abuse of discretion if we determine there is a reasonable possibility the pleading can be cured by amendment." (*Hernandez v. City of Pomona, supra*, 49 Cal.App.4th at pp. 1497-1498.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Pich v. Lightbourne* (2013) 221 Cal.App.4th 480, 490.)

## II

### *Nationwide's Challenges to the Assessment*

As noted above, six of the seven causes of action in the petition challenged the assessment and/or the Appeals Board's decision denying Nationwide's petition for reassessment. In this section, we discuss these causes of action. In the next section, we discuss the one cause of action that challenged charges to Nationwide's reserve account.

A.      Exhaustion of Administrative Remedies

        *i.      General principles*

"The rule requiring exhaustion of administrative remedies is well settled.  'In general, a party must exhaust administrative remedies before resorting to the courts.  [Citations.]  Under this rule, an administrative remedy is exhausted only upon "termination of all available, nonduplicative administrative review procedures."  [Citations.]'  [Citations.]  [¶]  The exhaustion rule ' "is not a matter of judicial discretion, but is a fundamental rule of procedure . . . binding upon all courts." ' "  (*Williams & Fickett v. County of Fresno* (2017) 2 Cal.5th 1258, 1267-1268.)  The rule applies to taxpayers seeking relief from an allegedly erroneous tax assessment.  (*Grotenhuis v. County of Santa Barbara* (2010) 182 Cal.App.4th 1158, 1163.)

     "A demurrer may properly be sustained based on the failure to adequately plead exhaustion of administrative remedies.  [Citation.]  In order to withstand a demurrer for failure to allege exhaustion of available administrative remedies, the plaintiff must allege facts showing that he did exhaust administrative remedies."  (*Tejon Real Estate, LLC v. City of Los Angeles* (2014) 223 Cal.App.4th 149, 156.)  "A complaint is also vulnerable to demurrer on administrative exhaustion grounds where the complaint's allegations, documents attached thereto, or judicially noticeable facts indicate that exhaustion has not occurred."  (*Parthemore v. Col* (2013) 221 Cal.App.4th 1372, 1379.)

        *ii.      The administrative remedies that must be exhausted prior to filing a lawsuit challenging a tax assessment*

The California Constitution gives the Legislature exclusive control over the procedure pursuant to which a taxpayer may challenge a tax assessment.  Article XIII, section 32 provides:  "After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."  In the context of payroll taxes, the Legislature has enacted detailed

administrative procedures that must be exhausted before filing a lawsuit to challenge a tax assessment.

The process begins when EDD issues a notice of assessment. If the entity to whom the notice was issued disagrees with the assessment, it has 30 days to file a petition for reassessment with an ALJ. (§ 1222.) The ALJ shall review the matter, grant a hearing if requested, and render a decision. (§ 1223.) Within 30 days of service of the ALJ's decision, the entity may file an appeal to the Appeals Board, and the Appeals Board's decision becomes final 30 days after it is served. (§ 1224.) We will refer to this part of the process as the "petition for reassessment process."

The process does not end when the Appeals Board issues its decision on the petition for reassessment. Instead, if the entity disagrees with the decision and still wishes to challenge the assessment, it must pay the assessment in full and file a "claim for refund" with EDD. (See § 1178, subd. (d) ["Following a final decision denying a petition for reassessment . . . the employing unit . . . may file a claim for refund upon payment of the amount of the assessment . . . and thereafter may pursue all administrative and judicial review rights . . ."].) If EDD denies the claim for refund, the entity has 30 days to appeal the denial to an ALJ. (§§ 1180, 1222.) A hearing "is not required . . . if a prior hearing has been afforded the petitioner involving the same issues" unless the employer "files an affidavit setting forth new and additional evidence," in which case the ALJ "may grant an additional hearing" before rendering a decision. (§ 1223.) Within 30 days of service of the ALJ's decision, the entity may file an appeal to the Appeals Board, which will render a final decision. (§ 1224.) We will refer to this part of the appeals process as the "claim for refund process."

Section 1241 provides: "No suit or proceeding shall be maintained in any court for the recovery of any amount of contributions, interest or penalties alleged to have been erroneously or illegally assessed or collected unless a claim for refund . . . has been filed pursuant to this chapter. Within 90 days after the service of the notice of the decision of

7

the appeals board upon an appeal, the claimant may bring an action against the director [of EDD] . . . in a court of competent jurisdiction in the County of Sacramento for the recovery of the whole or any part of the amount with respect to which the claim has been denied." (§ 1241, subd. (a).) As we will discuss in more detail below, in *Merchandising Concept Group, Inc. v. California Unemployment Ins. Appeals Bd.* (2010) 181 Cal.App.4th 1274, 1280-1281 (*Merchandising Concept Group*) and *Patane v. Kiddoo* (1985) 167 Cal.App.3d 1207, 1211-1212 (*Patane*), this court held section 1241 requires a claimant to exhaust all steps of the claim for refund process in order to file a lawsuit challenging an EDD tax assessment.

### iii.    Analysis

Nationwide's problem is that although it exhausted all steps of the petition for reassessment process, it did not begin, much less exhaust, the claim for refund process.[2] It thus does not allege facts showing it exhausted all available administrative remedies before resorting to the courts. Its problem is illustrated by *Merchandising Concept Group, supra*, 181 Cal.App.4th 1274 and *Patane, supra*, 167 Cal.App.3d 1207. Both cases were decided by this court, are factually similar, and conclusively demonstrate why

---

[2]    It is clear from the allegations in the petition that Nationwide did not complete the claim for refund process. It alleges "section 1241 is no longer available as the statutory period has expired," and we find this constitutes an admission that it did not exhaust its administrative remedies. It also alleges that resorting to the claim for refund process "would be futile because it is clear what EDD's decision would be," and we find this constitutes a further admission it did not begin or complete that process. We also note that Nationwide does not raise a futility argument on appeal, likely because it recognizes futility is not an excuse for failing to exhaust the claim for refund process. (*Patane, supra*, 167 Cal.App.3d at p. 1214.) Because it is clear from the allegations in the petition that Nationwide did not exhaust the claim for refund process, we agree there is no reasonable possibility the petition could be amended to cure the defect, and the trial court thus did not abuse its discretion in denying leave to amend the causes of action challenging the assessment.

Nationwide's petition was properly dismissed for failure to exhaust administrative remedies.

In *Merchandising Concept Group, supra*, 181 Cal.App.4th 1274 EDD audited the plaintiff, determined it had misclassified certain workers as independent contractors, and issued an assessment as a result. The plaintiff filed a petition for reassessment with an ALJ, and the ALJ affirmed the assessment. The plaintiff then appealed the ALJ's decision to the Appeals Board, and the Appeals Board affirmed. (*Id.* at p. 1278.) The plaintiff paid the assessment and filed a claim for refund with EDD, and also filed a lawsuit seeking a writ of mandate directing the Appeals Board to set aside its decision. The Appeals Board demurred on the ground that the plaintiff failed to exhaust its administrative remedies. (*Ibid.*) The trial court sustained the demurrer without leave to amend, and the appellate court affirmed. (*Id.* at pp. 1277, 1279.)

Although the court implicitly recognized that filing a petition for reassessment and obtaining a final decision from the Appeals Board denying the petition was part of the exhaustion process, it held that it was not the end of the process. (*Merchandising Concept Group, supra*, 181 Cal.App.4th at p. 1280.) Instead, in order to fully exhaust administrative remedies, section 1241 also required the plaintiff to complete the claim for refund process. As the court explained: "Here, the administrative remedy Merchandising Concept Group had to exhaust to bring a 'suit or proceeding' in the superior court was its claim of refund. This requirement of exhaustion is found in section 1241, subdivision (a). While the first sentence of subdivision (a) seems to require only the filing of the claim for refund, the second sentence of subdivision (a) makes clear a decision from the Appeals Board, here, one regarding the petition for review of the denial of claim for refund, is also necessary for exhaustion." (*Merchandising Concept Group*, at pp. 1280-1281, fn. omitted.) The court thus held a claimant must exhaust *all* steps of the claim for refund process — including filing a claim for refund and appealing an adverse decision first to an ALJ and then to the Appeals Board — before bringing a lawsuit to recover

9

payroll taxes. (*Id*. at p. 1281.) Although the plaintiff completed the first step by filing a claim, it did not complete the remaining steps and "thus fail[ed] to satisfy the requirement to exhaust its administrative remedies." (*Ibid*.)

The same result was reached in *Patane, supra*, 167 Cal.App.3d 1207, on similar facts. There, EDD audited the plaintiff, determined the plaintiff had misclassified employees as independent contractors, and issued an assessment for unpaid employer contributions. The plaintiff filed a petition for reassessment, the ALJ overturned the assessment, EDD appealed, and the Appeals Board reversed and reinstated the assessment. The plaintiff then paid the assessment and filed a claim for refund. EDD denied the claim, the plaintiff petitioned for review, and an ALJ denied the petition. The plaintiff never appealed the ALJ's decision to the Appeals Board, however, and instead filed a lawsuit seeking a refund. (*Id*. at pp. 1209-1210.) EDD moved for summary judgment on the ground the plaintiff failed to appeal the denial of its claim for refund to the Appeals Board. The trial court granted the motion and the appellate court affirmed, holding the "plaintiff's failure to exhaust administrative remedies is established beyond reasonable dispute and that such failure constitutes a fatal departure from the procedure governing an action for refund of taxes to which no extra statutory exceptions apply." (*Id*. at p. 1209; see *id*. at pp. 1210-1211.)

Like the court in *Merchandising Concept Group*, the *Patane* court held section 1241 "provides the manner of an employer action to recover improperly assessed unemployment insurance contributions." (*Patane, supra*, 167 Cal.App.3d at p. 1211.) It then held section 1241 "establishes *two prerequisites* to an action for [a] refund of" taxes the employer claims were "illegally assessed and collected." (*Patane*, at p. 1211, italics added.) "First, the employer must file with [EDD] a timely claim for refund." (*Ibid*.) The plaintiff completed the first prerequisite. "Second, the employer must commence the action within 90 days after service of notice of the [appeals] board's decision upon an appeal from [EDD's] denial of his refund claim." (*Ibid*.) The court noted the "plaintiff

10

could not have satisfied this [second] prerequisite to judicial relief unless he first appealed to the [appeals] board from denial of his refund claim." (*Id*. at pp. 1211-1212.) Because it was undisputed the plaintiff never filed an appeal with the Appeals Board, it did not complete the second prerequisite to judicial review, which was "fatal" to its lawsuit. (*Id*. at pp. 1213-1214.)

The *Patane* court found further support for its conclusion in section 1179, which provides: "A *waiver* of any demand against the state or the director [of EDD] on account of overpayment shall apply when any of the following occur: [¶] (a) Failure to [timely] file a claim with [EDD] . . . . [¶] (b) Failure, after denial of a claim by [EDD], to [timely] file a petition for review with an administrative law judge . . . . [¶] (c) *Failure to [timely] file an appeal from an adverse administrative law judge's decision to the appeals board . . . .*" (Italics added.) Because the plaintiff failed to appeal the ALJ's decision denying the claim for refund to the Appeals Board, the court found the plaintiff had waived the plaintiff's claim for a refund. (*Patane, supra*, 167 Cal.App.3d at pp. 1212, 1214.)

So, too, in this case. It is clear from the allegations in the petition that Nationwide did not file a claim for refund, and it thus did not begin, much less exhaust, the claim for refund process. Although it exhausted some available administrative remedies, it was required to exhaust "all" available administrative remedies, and its failure to do so is fatal to its lawsuit. (*Muskan Food & Fuel, Inc. v. City of Fresno* (2021) 69 Cal.App.5th 372, 383.) Moreover, by failing to file (1) a claim for refund with EDD, (2) a petition for review with an ALJ after EDD denied the claim, and (3) an appeal from the ALJ's adverse decision to the Appeals Board, Nationwide has waived its claim for a refund.

Nationwide appears to argue it was not required to exhaust administrative remedies because it paid the assessment after the lawsuit was filed. This argument conflates two separate concepts: (1) the exhaustion of administrative remedies requirement, and (2) the so-called "pay first, litigate later" rule.

The pay first, litigate later rule provides, " 'A taxpayer ordinarily must pay a tax before commencing a court action to challenge the collection of the tax.' " (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.)  The purpose of the rule " ' "is to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted." ' " (*Ibid*.)  The rule is reflected in section 32 of article XIII of the California Constitution, which provides, "No legal or equitable process shall issue in any proceeding in any court . . . to prevent or enjoin the collection of any tax."  Section 1851 of the Unemployment Insurance Code contains a similar provision specific to taxes collected by EDD.[3]

Nationwide argues the pay first, litigate later rule is inapplicable because it paid the assessment after the petition was filed.  The trial court *agreed*.  As noted above, one of the grounds for the demurrer was that "article XIII, section 32 of the California Constitution and Unemployment Insurance Code section 1851 prohibit the issuance of writs to enjoin or prevent tax collection."  The trial court *overruled* the demurrer on this ground, finding, "Because all taxes due have been paid, there can no longer be a court order 'to prevent or enjoin the collection of any tax.' "

The fact that the pay first, litigate later rule is inapplicable, however, does not mean the exhaustion of administrative remedies requirement is also inapplicable.  Instead, in order to file a lawsuit challenging a tax assessment, a party must do two things:  (1) pay the assessment (i.e., in order to comply with the pay first, litigate later rule), and (2) exhaust all available administrative remedies regarding the assessment.  Even though Nationwide paid the assessment, it did not exhaust all administrative remedies by filing a claim for refund and completing that process before filing a lawsuit.

---

[3]      It provides, "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action or proceeding, in any court against this State or against any officer thereof to prevent or enjoin the collection of any contribution sought to be collected under this division."  (§ 1851.)

*Merchandising Concept Group* and *Patane* are instructive. In both cases, the plaintiff paid the assessment before filing a lawsuit, and the lawsuits thus were not barred by the pay first, litigate later rule. In both cases, however, the court found the lawsuits were barred by the failure to exhaust administrative remedies. (*Merchandising Concept Group, supra*, 181 Cal.App.4th at p. 1277; *Patane, supra*, 167 Cal.App.3d at p. 1209.) Simply put, paying the assessment does not excuse a claimant from exhausting all available administrative remedies, and Nationwide's failure to do so is fatal to its claims.

B.     Adequate Remedy at Law

The trial court also granted the demurrer to the causes of action challenging the assessment on the ground that writ relief was not available because Nationwide had an adequate remedy at law. We agree.

It has long been held that a writ of mandate will not issue "when the petitioners have a plain, speedy, and adequate remedy at law." (*Abbott v. Superior Court* (1924) 69 Cal.App. 660, 664; see also Code Civ. Proc., § 1086 ["writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law"]; *County of Sacramento v. Assessment Appeals Bd. No. 2* (1973) 32 Cal.App.3d 654, 672 ["A writ of mandamus . . . only issues when there otherwise is no speedy and adequate remedy at law"].) It has also long been held, "Because a tax refund action provides . . . an adequate remedy at law, equitable actions for mandamus, injunctive, and declaratory relief generally are unavailable to obtain judicial review of a local assessment appeals board decision." (*William Jefferson & Co., Inc. v. Orange County Assessment Appeals Bd. No. 2* (2014) 228 Cal.App.4th 1, 11; see also *Schoenberg v. County of Los Angeles Assessment Appeals Bd.* (2009) 179 Cal.App.4th 1347, 1355 ["mandate is available only when there is no adequate remedy at law, and Schoenberg had a remedy at law in the form of a tax refund action"].) Because a tax refund action is an adequate remedy at law, Nationwide cannot challenge the Appeals Board's decision by petition for writ of mandate.

Once again, *Merchandising Concept Group* is instructive.  Like Nationwide, the plaintiff in *Merchandising Concept Group* filed a petition for writ of mandate challenging the Appeals Board's decision denying its petition for reassessment.  (*Merchandising Concept Group, supra*, 181 Cal.App.4th at p. 1278.)  The plaintiff argued the purpose of its petition was not "to obtain a refund of taxes, but rather, to 'test the validity of the [Appeals Board's] [rea]ssessment decision,' " and its petition thus was not barred by the rule that writ relief is unavailable when an adequate remedy at law exists.  (*Id.* at p. 1284.)  The court disagreed and held that no matter how the plaintiff characterized the relief sought, "the result is still the same because there is an adequate legal remedy. [Citation.]  [¶]  The only significance of the Appeals Board's decision on the reassessment petition was its determination the workers were employees.  That issue will be subject to judicial review when [the plaintiff] completes the administrative process initiated by its claim for a refund.  Thus, the refund suit is an adequate legal remedy." (*Ibid*.)

Nationwide argues a refund suit is no longer an adequate or available remedy because it is too late for it to file a claim for refund.  This may be true, but it is not relevant.  The issue is whether Nationwide "has *or had* an adequate legal remedy." (*Barratt American, Inc. v. City of Rancho Cucamonga* (2005) 37 Cal.4th 685, 705, italics added.)  Thus, "The fact that [Nationwide] is time-barred from . . . [filing a claim for refund] does not change the result.  Where the Legislature has provided for a[n] . . . action to review government actions, mandamus is unavailable to bypass the statutory remedy after the limitations period has expired."  (*Ibid*.; see also *Roth v. City of Los Angeles* (1975) 53 Cal.App.3d 679, 687 ["The fact that the remedy is no longer available does not, of course, alter application of the doctrine, as to hold otherwise would obviously permit circumvention of the . . . doctrine"].)

Nationwide also argues Code of Civil Procedure section 1094.5 specifically authorizes judicial review of the Appeals Board's decision.  Code of Civil Procedure

14

section 1094.5 authorizes a court to inquire "into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer." (Code Civ. Proc., § 1094.5, subd. (a).) Nationwide argues the Appeals Board's decision fits squarely within the plain language of Code of Civil Procedure section 1094.5, and that decision thus may be challenged by petition for writ of mandate. We disagree. Once again, *Merchandising Concept Group* is instructive. The plaintiff in that case made a similar argument, which the court rejected, explaining: "While '[t]he purpose of [Code of Civil Procedure] section 1094.5 is to inquire into the validity of any final administrative order' [citation], the Appeals Board's characterization of its reassessment decision as 'final' is not controlling. As we have already explained, on the issue of the propriety of the tax assessment, a final decision is the Appeals Board's decision on the petition for review regarding the denial of a claim for refund, which comes after its decision on the reassessment." (*Merchandising Concept Group, supra*, 181 Cal.App.4th at p. 1283.) The court ultimately held there is no right to judicial review of the Appeals Board's decision denying a petition for reassessment, and judicial review may only be had by filing a refund action after exhausting all administrative remedies by completing the claim for refund process. (*Id*. at pp. 1281, 1284.) So, too, in this case.

III

*Nationwide's Challenge to Charges to its Reserve Account*

The fourth cause of action does not concern the assessment. Instead, it concerns charges to Nationwide's reserve account. In support of this cause of action, the petition alleged one of Nationwide's drivers (Koon Mosana) "filed a UI claim after [Nationwide] stopped assigning loads to him as his commercial license was revoked by the state and as such he could not work without the requisite licensing"; Nationwide "contested" the claim and/or "protested" that the driver "was not [an] employee, and that even if [he] was

15

found to be an employee, he does not qualify for UI benefits"; and "EDD did not schedule a hearing" to "determine whether he qualified for UI benefits" and "unilaterally charged [Nationwide's] reserve account." Although perhaps not expressly alleged, it is implied that this cause of action challenges the charges to Nationwide's reserve account.

The trial court analyzed the fourth cause of action differently than the causes of action challenging the assessment. It sustained the demurrer on the ground that Nationwide failed to exhaust its administrative remedies, but overruled the demurrer on the ground that writ relief was unavailable. This appeal challenges only the first ruling.

On the exhaustion issue, the trial court noted, "Challenges to charges to a reserve account are distinct from challenges to tax assessments, and are subject to *a separate exhaustion requirement*" governed by section 1034. Section 1034 provides a "written protest" must be filed with EDD "within 60 days after the date of mailing of any statement of . . . charges to the reserve account. . . . No protest may be made on the ground that a claimant was ineligible for a benefit payment where the employer was notified . . . of the filing of a claim for the benefits or of a determination of the claimant's eligibility therefor and the employer failed to file a timely appeal on the benefit claim, or a final decision of an administrative law judge or of the appeals board affirmed the payment of the benefits." The trial court noted the petition alleged only that Nationwide "contested" that the driver was not its employee, and "protested" his claim for UI benefits, and it concluded, "Without more details, these allegations are insufficient to show that [Nationwide] complied with section 1034." It thus sustained the demurrer to the fourth cause of action without leave to amend.

Nationwide spends little time discussing this portion of the trial court's ruling. It appears to argue, however, both that the trial court should not have sustained the demurrer because it has adequately alleged it complied with section 1034, and, alternatively, that the trial court abused its discretion by denying leave to amend because

16

any pleading defects "can be cured by amendment." We disagree with the first argument but agree with the second.

The petition alleges, "One of Petitioner's workers filed a claim for unemployment insurance (UI) benefits, which Petitioner protested however its reserve account was charged against its protest without a hearing to determine whether he qualified for UI benefits." It also alleges: "Petitioner's worker Mr. Mosana . . . filed a UI claim after Petitioner stopped assigning loads to him as his commercial license was revoked by the state as such he could not work without the requisite licensing. Petitioner contested that Mr. Mosana was not Petitioner's employee, and that even if Mr. Mosana was found to be an employee, he does not qualify for UI benefits. . . . [¶] . . . Petitioner submitted facts to support its position, however, EDD did not schedule a hearing and unilaterally charged Petitioner's reserve account." These are the *only* allegations that address exhaustion. We cannot tell from these allegations whether Nationwide complied with section 1034, and we thus agree Nationwide has not adequately alleged facts showing it exhausted its administrative remedies and the trial court properly sustained the demurrer on this basis.

The only remaining issue is whether the trial court abused its discretion in denying leave to amend. In explaining why it denied leave to amend, the trial court noted it had "previously sustained the demurrer to the original petition on the same grounds," and Nationwide "failed to cure" defects and it thus "does not appear that it will be able to do so with an additional opportunity to amend." We note the original petition did not include a cause of action challenging charges to Nationwide's reserve account, and the first amended petition was thus Nationwide's initial attempt to plead such a cause of action. "It is often said that leave to amend a complaint should be liberally granted, particularly with respect to a party's initial complaint. 'The policy favoring amendment is so strong that it is a rare case in which denial of leave to amend can be justified.' [Citation.] ' "Where [a] complaint is defective, '[i]n the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend his complaint, and it

17

ordinarily constitutes an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility that the defect can be cured by amendment.' " ' " (*City of Torrance v. Southern California Edison Co.* (2021) 61 Cal.App.5th 1071, 1091.) "Generally, it is held to be an abuse of discretion to sustain without leave to amend a demurrer to an original complaint, unless the complaint shows on its face that it is incapable of amendment." (*Temescal Water Co. v. Department of Public Works* (1955) 44 Cal.2d 90, 107.) We cannot say the petition shows on its face that it is incapable of amendment to adequately allege exhaustion.

We also note that whether the trial court abused its discretion in denying leave to amend "is reviewable on appeal 'even in the absence of a request for leave to amend' [citation] . . . ." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971.) "While a plaintiff need not request leave to amend in order to preserve on appeal the issue of whether the court abused its discretion in sustaining a demurrer without leave to amend (Code Civ. Proc., § 472c), on appeal the plaintiff does bear the burden of proving there is a reasonable possibility the defect in the pleading can be cured by amendment." (*Palm Springs Tennis Club v. Rangel* (1999) 73 Cal.App.4th 1, 7.) " 'The plaintiff . . . may . . . meet this burden [for the first time] on appeal.' " (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132, brackets in original.)

It appears Nationwide has attempted to meet its burden by attaching to its opening brief a document that it contends demonstrates it complied with section 1034. The document was sent to Nationwide by EDD. It is titled "Notice of Wages Used for Employment Insurance (UI) Claim," and it concerns the UI claim filed by Mosana. It states, "If information about wages is correct and you do not wish to request a ruling, no further action is necessary." It also states Mosana received UI benefits, and "100.000%" of the benefits paid to him are "chargeable to your reserve account." Finally, it states, "To request a ruling, supply the information below" by "06-07-17." Nationwide's

18

attorney signed the form on June 6, 2017, and attached a paragraph stating Mosana suffered a stroke and could no longer drive a truck, and he was an independent contractor rather than an employee. On its face, this notice appears to constitute a "statement of charges . . . to [Nationwide's] reserve account" within the meaning of section 1034, and it further appears Nationwide followed the instructions on the notice for filing a written protest thereto and requesting a ruling.

Respondents never mention this document, much less address its relevance (or lack thereof) to the exhaustion issue. Indeed, they barely address the fourth cause of action. They note section 1034 requires a party seeking to challenge a charge to a reserve account to file a written protest " 'within 60 days after the date of mailing of any statement of charges or credits and charges to the reserve account,' " and they argue a party who fails to do so "is foreclosed from later making such a challenge." This is true, but it appears Nationwide contends it can amend the complaint to allege it filed a written protest within 60 days of receiving a statement of charges to its reserve account. If so, it should be given the opportunity to do so. Respondents also argue, "This dispute arose from [EDD's] tax assessment, not charges to [Nationwide's] reserve account," and they note the only relief sought in the petition is an order directing the Appeals Board to set aside its decision upholding the assessment. This may be true, but however the dispute arose, the petition contains one cause of action challenging charges to Nationwide's reserve account, and the petition could be amended to seek relief specific to that cause of action (and we note it already seeks "such other and further relief as the Court may deem proper").

Particularly with almost no argument from respondents on this issue, we find there is at least a reasonable possibility Nationwide could amend the petition to allege it complied with section 1034, and it was an abuse of discretion to deny leave to amend.

19

**DISPOSITION**

The judgment of dismissal is reversed.  On remand, the trial court is directed to vacate that portion of its order sustaining the demurrer to the fourth cause of action challenging charges to Nationwide's reverse account without leave to amend, and to grant Nationwide leave to amend to allege, if it can, that it exhausted its administrative remedies as to that cause of action.  In all other respects, the order sustaining the demurrer without leave to amend is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(3), (5).)

        /s/
    EARL, P. J.

We concur:

    /s/
MAURO, J.

    /s/
MESIWALA, J.